366 So.2d 85 (1979)
Clifford E. RICE, Appellant,
v.
INSURANCE & BONDS, INC., Appellee.
Nos. 78-327, 78-328 and 78-429.
District Court of Appeal of Florida, Third District.
January 2, 1979.
Wicker, Smith, Blomquist, Davant, McMath, Tutan & O'Hara and Richard A. Sherman, Miami, for appellant.
Corlett, Merritt, Killian & Sikes and Gerald R. Rosser, Miami, for appellee.
Before PEARSON, HUBBART and SCHWARTZ, JJ.
PEARSON, Judge.
The issue presented on these appeals is whether recovery upon an oral contract between the plaintiff, an insurance agent, and the defendant, an insurance agency, is *86 barred by the statute of frauds.[1] The three appeals present the same issue and were apparently taken out of an overabundance of caution.
The agreed statement of facts is that after jury verdict in favor of the plaintiff for $55,727.21, the trial court granted the defendant's post-trial motion for directed verdict, and this appeal was taken by the plaintiff. The basis of the court's ruling was that the oral contract was not enforceable because of the statute of frauds.
The facts were that the plaintiff, Clifford Rice, was a life insurance agent who decided to become a casualty insurance agent and, therefore, went to school and received his license. He talked with Mr. Paine of defendant agency, Insurance & Bonds, Inc., about becoming an agent and writing business in the Florida Keys. Paine and Rice subsequently entered into an agreement, which is the subject of this suit.
The agreement was that Rice would pay all of his own expenses, costs, social security, withholding taxes, etc. Paine would "show him the ropes" about writing and servicing casualty policies. Rice would service Paine's policies in the Keys. With any policies Rice wrote through his own solicitation or through referral of Paine, the commission would be split fifty-fifty through the life of the policy and renewals. The policies Rice wrote belonged to him and after Rice and Paine ceased working together, Rice would still own these accounts and would receive the dailies, although they would continue to split the commissions fifty-fifty on renewals throughout the life of the policy.
This agreement worked well for three and one-half years, until Paine decided to fire Rice. Thereafter, Paine refused to turn over the dailies to Rice, and also refused to turn over Rice's half of the commissions on renewals. This suit followed.
During trial, Paine testified about the agreement:
"Q. But then your testimony, on the other hand is that if he developed an account solely and only on his own, that was his account. He owned it. He had the right to take it with him; to transfer it to another agency; to transfer it to another company if the customer would permit. Is that right?
"A. [by Mr. Paine] Yes, providing he developed it with no help from any of my accounts or references, right, as I still have no objection to that. He can still have those accounts and he can have the records as they expire. I am paying him a commission on them until they expire."
The testimony was that the policies written by an agent are referred to as a "book of business," and have a saleable value. This "book of business" is frequently sold by agents wishing to move, retire, etc., and purchased by other agents wishing to expand their business. The testimony was to the effect that the normal purchase price of a "book of business" is one and one-half times the annual premium income.
Witness Allen Pither testified as an expert on the value of the "book of business" in this case. He testified that the key factor in determining its value is the type of policy involved, because some types, such as automobile policies, are less likely to be renewed with the same company, while other types, such as homeowners policies, have a very high rate of renewal. Accordingly, he broke the business down to the amount of commissions written for the various types of policies and he applied the renewal frequency to each type in order to get the expected value of commissions throughout the renewal life of the policies. From this, he computed the value of the "book of business" and thereby calculated the fair *87 value of the "book of business" in this instance to be $55,744. The amount of the verdict returned by the jury was $55,727.21.
There is no question of the existence of the contract or its terms. Plaintiff Rice, as appellant, urges that the court erred in holding that the statute of frauds was applicable to this contract because it is an executed contract and, therefore, exempt from the application of the statute by the holdings in Grossman v. Levy's, 81 So.2d 752 (Fla. 1955); McDowell v. Ritter, 153 Fla. 50, 13 So.2d 612 (1943); Dionne v. Columbus Mills, Inc., 311 So.2d 681 (Fla.2d DCA 1975); and Miami Beach First National Bank v. Shalleck, 182 So.2d 649 (Fla.3d DCA 1966).
The main focus of defendant's argument is that the plaintiff has admitted by evidence he introduced that the contract was a continuing one with portions of the contract to be performed after the termination of the relationship. In his proof of the terms of the contract, plaintiff offered into evidence a letter from Mr. Paine, the active member of the defendant agency, which included the language: "As I advised you, your accounts belong to you and we will pay commission on your accounts until they expire, so long as you service the account."
The important distinction here is that plaintiff is not suing for commissions on accounts. His complaint claims damages for the defendant's wrongful solicitation of business belonging to the plaintiff. These allegations, which the jury found to be true, amount not to an action for wrongful termination of the contract but to the misappropriation of an asset admittedly belonging to the plaintiff. Under these circumstances, the evidence that if the defendant had not terminated the relationship, there would have been additional duties on each party, does not constitute plaintiff's action as one founded on an unenforceable contract.
In Tobin & Tobin Insurance Agency, Inc. v. Zeskind, 315 So.2d 518 (Fla.3d DCA 1975), the agency brought an action to recover commissions on an oral agreement to split commissions. The trial court held, and this court affirmed the holding, that the action to enforce the contract was barred by the statute of frauds. We think that holding does not bar recovery in the present case because this is not an action to recover commissions but to recover damages for property retained by the agency.[2]
Does the fact that the oral arrangement between the parties contained the provision that the plaintiff owned his personally-produced accounts make an action to recover damages for the appropriation of the accounts an action on the contract? We hold that it does not, because the enforcement of the contract was not necessary in order for the jury to find that the plaintiff owned the accounts. The plaintiff introduced letters from the defendant which acknowledged plaintiff's ownership of his accounts. Defendant properly argues that these letters are not a contract; they are, however, sufficient to prove ownership of the accounts.
We hold that the contract was executed with regard to the ownership of the accounts. As such, the plaintiff was entitled to the jury verdict. In Grossman v. Levy's, 81 So.2d 752 (Fla. 1955), the court held that a contract within the statute of frauds is not a nullity, and that because the statute pertains exclusively to the remedy, the contract may be the basis for proof in a lawsuit that does not seek its enforcement.
We have considered the argument of the defendant that the directed verdict can be supported by a finding that the damages proved were too speculative to amount to proper proof. We hold that this argument is untenable upon this record.
*88 The judgment upon the directed verdict is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.
Reversed and remanded.
NOTES
[1] The parties agree that the trial court applied Section 725.01, Florida Statutes (1977), which is:

"No action shall be brought ... upon any agreement ... that is not to be performed within the space of 1 year from the making thereof, ... unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by him thereunto lawfully authorized."
[2] Cf. the principle of law in Star Fruit Co. v. Eagle Lake Growers, Inc., 160 Fla. 130, 33 So.2d 858, 860 (1948):

"`The gist of a conversion has been declared to be not the acquisition of the property of the wrongdoer, but the wrongful deprivation of a person of property to the possession of which he is entitled. A conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion.' 53 Am.Jur., p. 822."