**IMPOSSIBLE ELECTRONICS TECH-NIQUES, INC., Plaintiff-Appellant,**

v.

**WACKENHUT PROTECTIVE SYS-TEMS, INC., Defendant-Appellee.**

**No. 80–5890.**

United States Court of Appeals,
Fifth Circuit.*
Unit B

March 11, 1982.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Andrew F. Mimnaugh, Philadelphia, Pa., for plaintiff-appellant.

Richard H. W. Maloy, Coral Gables, Fla., for defendant-appellee.

Before MORGAN, TJOFLAT and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

In this diversity action, the appellant, Impossible Electronic Techniques, Inc., sued the appellee, Wackenhut Protective Systems, Inc., for breach of an oral contract to buy certain electronic closed-circuit cameras. Wackenhut denied that such a contract had been made and interposed the Statute of Frauds as a defense. The district court granted Wackenhut's motion for summary judgment and dismissed the case. We reverse.[1]

## I. FACTS

Sometime in late 1973, George Wackenhut, chairman of the board and president of the Wackenhut Corporation, the parent

---

1. This is not the first time we have heard this case on appeal. Wackenhut initially moved to dismiss Impossible's complaint for failure to state a claim. The district court granted this motion, and we reversed. 610 F.2d 371 (5th Cir. 1980).

company of the appellee, decided that his personal home, known as the "Castle," in Coral Gables, Florida, needed a little extra security. Thereafter, the appellee began looking to purchase a closed-circuit television camera security system, and contacted the six or eight companies in the United States that manufacture such equipment. Two of these companies, one of which was the appellant, were invited in January, 1974, to conduct a demonstration of their equipment at the "Castle." Mr. Wackenhut personally decided that the appellant's camera produced the best picture.

At this point, the appellant's and the appellee's versions of the facts diverge. The appellant contends that after its demonstration the price for its cameras was discussed, Mr. Wackenhut decided to use appellant's cameras, and an oral contract for the sale was made. The appellee, conversely, claims that while Mr. Wackenhut concluded that he wanted the appellant's cameras, no further negotiations were conducted and no agreement was reached.

The parties agree, however, that the appellee stated that it would need a local company to install and to maintain the system. In response, the appellant recommended Jackson & Church Electronics, Inc., a local dealer of the appellant's equipment. Appellee had never heard of Jackson & Church before this time. Although the appellee's brief implies that the appellee next contacted Jackson & Church (Brief of Appellee at 4), the record appears to indicate that the appellant first contacted Jackson & Church to inquire whether that company would be willing to handle the installation and maintenance. Record on Appeal, vol. II, at 130.

The appellant apparently initiated the documentary aspects of the transaction by preparing in late March a shipping instructions form for the first camera and accessories to be sent to Jackson & Church. The president of Jackson & Church next mailed a letter to the appellant explaining how payment for the equipment would be made, thanking the appellant for the referral, and describing the appellee as "yours [i.e., the appellant's] and our [i.e., Jackson & Church's] customer." Jackson & Church forwarded a purchase order to the appellant listing three cameras, two auto-zoom lenses, one auto-iris, three lens control units, and one rack mount assembly, all totaling $32,-119.[2] The appellee sent Jackson & Church a purchase order listing the same items and quantities as in the Jackson & Church purchase order (although for prices totaling $43,420) and assorted additional electronic paraphernalia, amounting to a total price of $47,678. The appellant contends that the price differences between the purchase orders merely represents the additional charges imposed by Jackson & Church for the installation and maintenance services. The appellee claims that Jackson & Church bought the equipment from the appellant at a dealer discount for resale to the appellee at retail prices.

After these documents were issued, the appellant commenced assembling the cameras. Due to some delays in obtaining parts and the special nature of the cameras, the first camera was not completed until early June, 1974, at which time the appellant's president, Jesse Wagner, personally delivered it to the Wackenhut residence. An employee of Jackson & Church installed the camera in the presence of Wagner and representatives of the appellee. George Wackenhut would occasionally visit the installation locations and at one point discussed with Wagner the service life and warranties of the camera. In response to a question, Wagner informed Wackenhut that the pic-

---

**2.** The appellant's First Amended Complaint seeks damages of $30,609 from the lost sale plus $1,931.53 in incidental expenses. This discrepancy between the purchase order price and the damages sought is not mentioned, let alone explained, by the parties. A $450 per lens price difference between Jackson & Church's purchase order and an invoice sent to Jackson & Church by the appellant was explained as being the result of Jackson & Church completing its purchase order before receiving appellant's invoice and therefore not taking into account special adjustments that appellant had to make to adapt the lenses to the local environment. Record on Appeal, vol. II, at 149.

ture tube, an essential component of each camera, had an operational life expectancy of about six months and a replacement cost of approximately $5,000. Not surprisingly, George Wackenhut was unhappy upon discovering that the camera system his company had bought for him had a yearly maintenance cost of possibly $30,000, more than half the purchase price of the system. One week later, before the remaining two cameras were shipped, the appellee sent a letter to Jackson & Church cancelling its purchase order. Jackson & Church in response notified the appellant that Jackson & Church was cancelling its purchase order. Appellee thereafter arranged to purchase through Jackson & Church a less expensive camera system manufactured by one of appellant's competitors. Distressed by this turn of events, the appellant filed this suit.[3]

## II. SUMMARY JUDGMENT LEGAL ANALYSIS

The appellee urges, and the opinion of the district court suggests, two distinct grounds supporting the grant of summary judgment. First, the appellee argues that it never entered into any contract with the appellant. While conceding that perhaps some preliminary negotiations with the appellant took place, the appellee takes the position that the facts reveal two separate agreements: one between appellee and Jackson & Church and the other between Jackson & Church and the appellant. Thus, under appellee's theory, appellee by mutual agreement with Jackson & Church rescinded its contract, and appellant has no con-

---

3. The appellant filed a separate suit against Jackson & Church for breach of duty as an agent. Since, however, Jackson & Church has gone out of business and filed a petition in bankruptcy, counsel for appellant has stated that appellant is no longer pursuing that matter.

4. The opinion of the district court and the brief of the appellee do not always articulate the issues as distinctly as set forth above. The district court and the appellee frequently subsume the question of whether a contract existed between the parties in discussing whether the requirements of the Statute of Frauds have been met. To some extent, the two issues overlap and are related. The Statute of Frauds

tractual rights which can be enforced against the appellee (*i.e.*, appellant's only recourse is against Jackson & Church). Second, the appellee argues that even if summary judgment cannot be based on the absence of an agreement between the parties, the appellee must nonetheless prevail because any oral contract with the appellant would be unenforceable by virtue of the Florida Uniform Commercial Code Statute of Frauds. Fla.Stat.Ann. § 672.2–201 (West 1966). The subject matter of the alleged contract (*i.e.*, a sale of goods for a price more than $500) undoubtedly comes within the prescriptions of the Statute of Frauds. The appellee contends that it is entitled to summary judgment because there is no writing that will satisfy the Statute and none of the statutory exceptions are applicable.[4]

■ Summary judgment should be entered only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Casey Enterprises v. American Hardware Mutual Insurance Co.*, 655 F.2d 598, 601–02 (5th Cir. 1981). In reviewing a decision granting or denying summary judgment, this court applies the same legal standards as those that control the district court in determining whether summary judgment is appropriate. *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981); *United States Steel Corp. v. Darby*, 516 F.2d 961 (5th Cir. 1975).

---

defense would not be available if the appellee admitted the existence of a contract with the appellants. Fla.Stat.Ann. § 672.2–201(3)(b). Moreover, the conclusion that the Statute of Frauds bars enforcement of any oral contract here entails rejecting certain documents (*e.g.*, the appellee's purchase order) as a sufficient memorandum to satisfy the Statute (presumably on the grounds that the writing does not reflect the contract between these parties). *See, infra*, Part III (B)(1). Nevertheless, each issue is analytically distinct from the other and provides a separate independent basis for granting summary judgment. This opinion will consider each distinctly.

The party seeking summary judgment bears the exacting burden of demonstrating that there is no actual dispute as to any material fact in the case. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Environmental Defense Fund v. Marsh*, 651 F.2d at 990–91. In assessing whether the movant has met this burden, the courts should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id.* All reasonable doubts about the facts should be resolved in favor of the non-moving litigant. *Casey Enterprises v. American Hardware Mutual Insurance Co.*, 655 F.2d at 602. A court must not decide any factual issues it finds in the record, but if such are present, the court must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh*, 651 F.2d at 991; *Lighting Fixture & Electric Supply Co. v. Continental Insurance Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts. *Id.* If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Croley v. Matson Navigation Co.*, 434 F.2d 73, 75 (5th Cir. 1970); *Marsden v. Patane*, 380 F.2d 489, 491 (5th Cir. 1967).

Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly carried its burden. *Adickes v. S. H. Kress & Co.*, 398 U.S. at 160, 90 S.Ct. at 1609–10; *Environmental Defense Fund v. Marsh*, 651 F.2d at 991; *Bernard v. Gulf Oil Co.*, 596 F.2d 1249, 1255 (5th Cir.), *vacated*, 604 F.2d 449 (5th Cir. 1979) (en banc), *adopted in pertinent part on rehearing en banc*, 619 F.2d 459, 463 (5th Cir. 1980), *aff'd on other grounds*, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611–12 (5th Cir. 1967). *See Dalke v. Upjohn Co.*, 555 F.2d 245, 248–49 (9th Cir. 1977).

With these standards in mind, we now turn to the particular facts of this case.

## III. DISPUTED ISSUES OF FACT

### A. *Existence of a Contract.*

There are at least three different legal interpretations of the events that form the basis of this lawsuit. Two of these theories support the appellant insofar as they tend to establish an agreement with the appellee, the third theory supports the appellee. The first theory is that there was a single contract between the appellant, the appellee, and Jackson & Church, whereby the appellant agreed to manufacture the cameras, Jackson & Church agreed to install and maintain them, and the appellee agreed to purchase this package. The second theory suggests that there were three contracts between these parties: one between the appellant and the appellee concerning in general the manufacture and sale of the cameras, one between the appellant and Jackson & Church concerning shipment, billing and collection, and one between the appellee and Jackson & Church concerning delivery, installation, maintenance, and payment.[5] The third theory is that the facts reveal only two separate contracts: one between the appellant and Jackson & Church for the sale of the cameras at a dealer

---

5. Under this second theory of the facts, the first contract between the appellant and the appellee would set forth the basic terms and structure of the deal. The details of the transaction such as shipping, billing, installation, and maintenance would be contained in separate contracts between appellant and Jackson & Church and appellee and Jackson & Church. The formation of these latter two contracts with Jackson & Church, thus, might be considered conditions precedent to the formation of the first contract between appellant and appellee.

discount and the other between Jackson & Church and the appellee for the retail sale of the equipment.

The problem with granting summary judgment on these facts regarding the existence of a contract is that there is substantial evidence in the record for each of these theories. The circumstances surrounding appellant's demonstration of its equipment are sufficiently ambiguous to support both the existence and the nonexistence of a contract. The appellant characterizes this meeting as resulting in an agreement for the sale of the cameras. The appellee, conversely, describes this meeting as only involving preliminary negotiations. *Compare* Record on Appeal, vol. II, at 123–24 with *id.* at 173–74. The deposition testimony of Jesse Wagner states that the price of the cameras was discussed at this time. *Id.* at 159. In contrast, an employee of the appellee in his deposition alternatively could not recall whether price was negotiated with the appellant, *id.* at 175, or stated that the appellee received price information from Jackson & Church. *Id.* at 176. The prior course of dealings between the parties (*i.e.*, appellant and appellee had done business together before, *id.* at 121; appellee had never heard of Jackson & Church prior to appellant's recommendation), the process

by which Jackson & Church became involved, and the time sequence in which the documents were issued would tend to support the appellant's position. Jackson & Church's letter to the appellant referring to the appellee as "yours and our customer" suggests that the appellant and the appellee had a more extensive relationship than merely that of manufacturer and retail customer. On the other hand, the nature and content of the documentary aspects of the transaction might suggest that the cameras were independently sold to Jackson & Church and resold to the appellee. The price difference between the two purchase orders is a fact amenable to more than one interpretation: appellant introduced deposition testimony that the differential reflects only the services Jackson & Church was to provide, *id.* at 107–08; the appellee hinted, *see id.* at 131, 161, but provided no direct evidence, that Jackson & Church bought the cameras at a dealer discount for resale at retail prices.

■ Given the ambiguities in the record, the parties' conflicting versions of the facts, and the competing factual inferences arising from this muddle, the only thing clear is that the appellee could not properly obtain summary judgment on this point.[6]

---

**6.** The appellee also argues that even if the court concludes that the parties intended to form a contract, such a contract would be unenforceable for want of sufficient certainty and definiteness in its terms. Brief of Appellee at 9–10. In contrast to the common law of contracts, the Florida Uniform Commercial Code provides that a contract can be enforced notwithstanding missing or uncertain terms:

(1) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract. (2) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined. (3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.

Fla.Stat.Ann. § 672.2–204 (West 1966). Moreover, the only term that the Florida Statute of Frauds requires the parties to express with particularity is the quantity of goods to be sold,

*id.* § 672.2–201(1), and in this case, there is no dispute over the amount of goods involved. Indeed, not only is the number of goods known here, but particular goods can be identified to this contract. The depositions also suggest that price, time of delivery, and other terms may be established by parol evidence at trial. The Florida Supreme Court has instructed that "[T]he courts should be extremely hesitant in holding a contract void for indefiniteness, particularly where one party has performed under the contract and allowed the other party to obtain the benefit of his performance." *Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp.*, 302 So.2d 404, 408 (Fla.1974). The Florida courts have interpreted this to mean that "a contract should not be held void for uncertainty unless there is no other way out, and 'indefiniteness must reach the point where construction becomes futile.'" *Innkeepers International, Inc. v. McCoy Motels, Ltd.*, 324 So.2d 676, 678 (Fla.Dist.Ct.App.1975). *See Tipton v. Woodbury*, 616 F.2d 170, 177 (5th Cir. 1980); *McTeague v. Treibits*, 388 So.2d 309, 313 (Fla.Dist.Ct.App.1980). Appellee has failed

### B. *Statute of Frauds.*

 The major ground for summary judgment advanced by the appellee and the district court is that even if the parties did enter into an oral contract, the Statute of Frauds renders such a contract unenforceable. The Florida Uniform Commercial Code Statute of Frauds provides in relevant part that "a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker." Fla.Stat. Ann. § 672.2–201(1) (West 1966). Such a writing is not required "[i]f the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made a substantial beginning of their manufacture or commitments for their procurement . . . ." *Id.* § 672.2–201(3)(a).[7] The appellee contends that the undisputed facts[8] show that the alleged contract falls within the general statutory provisions, that no writing exists sufficient to satisfy the Statute, and that the goods in question are not "specially manufactured" within the meaning of the Statute. The appellant flatly controverts these latter two propositions.

### 1. Memorandum Satisfying the Statute.

The Statute of Frauds does not require that *the* contract for the sale of goods be in writing; rather, the Statute requires only "*some* writing sufficient to indicate that a contract for sale has been made between the parties." A writing that omits or incorrectly states a term (other than the quanti-

to make any showing that would justify summary judgment on this ground.

7. The facts of this case would seem to implicate another exception to the requirement of a writing—the exception for goods "which have been received and accepted." Fla.Stat.Ann. § 672.2–201(3)(c) (West 1966). The first camera that was delivered to and installed at the Wackenhut residence one week before the appellee sent notice of its intent to cancel the contract might have been "received and accepted" within the meaning of this provision. *See id.* § 672.2–606. Moreover, if these cameras comprised a "commercial unit" as that term is defined in *id.* § 672.2–105(6), then acceptance of one would constitute acceptance of all of them. *Id.* § 672.2–606(2). Appellant, however, has not argued this point either before the district court or on appeal. Indeed, despite repeated questions on the applicability of the doctrine of "partial performance" directed to counsel for appellant at oral argument, counsel declined to pursue this argument on the ground that he was limited to the exceptions expressed in § 672.2–201, and that that section recognized partial performance only in connection with specially manufactured goods. Counsel, however, errs in this view of the section, as the Code adopts (albeit with some modification) the partial performance doctrine with respect to goods that have been received and accepted. *See* Uniform Commercial Code Official Comment No. 2. Nevertheless, absent extraordinary circumstances, we should not reverse a grant of summary judgment based on the presence of a factual issue that was not in some way brought to the attention of the district court. *Franz Chemical Corp. v. Philadelphia Quartz Co.*, 594 F.2d 146, 150 (5th Cir. 1979); *Frank C. Bailey Enterprises, Inc. v. Cargill, Inc.*, 582 F.2d 333, 334 (5th Cir. 1978); *DeBardeleben v. Cummings*, 453 F.2d 320, 324–25 (5th Cir. 1972). The failure of appellant to argue the point on appeal strengthens this conclusion. Given, however, our disposition of this case and that appellee would not be entitled to partial summary judgment on this issue, appellant remains free to raise this issue at trial.

8. Although some might consider the Statute of Frauds as a threshold, procedural barrier to establishing a judicially enforceable oral contract, *see, e.g., Grossman v. Levy's*, 81 So.2d 752, 753 (Fla.1955); *Rice v. Insurance & Bonds, Inc.*, 366 So.2d 85, 87 (Fla.Dist.Ct.App.1979), nevertheless, questions of material fact concerning the Statute of Frauds are for the trier of fact, and if present, will defeat a motion for summary judgment. *See, e.g., Fitzsimons v. Scharf*, 229 So.2d 649, 650 (Fla.Dist.Ct.App. 1969); *Bruce Construction Corp. v. State Exchange Bank*, 102 So.2d 288, 289 (Fla.1958). *See also National Egg Co. v. Schneider Egg Co.*, 519 F.2d 1145, 1147 (5th Cir. 1975); *Garver v. New England Telephone & Telegraph Co.*, 443 F.Supp. 610, 612 (D.N.H.1977); *Engel Mortgage Co. v. Triple K Lumber Co.*, 56 Ala.App. 337, 321 So.2d 679, 682–83 (1975); *Ludke Electric Co. v. Vicksburg Towing Co.*, 240 Miss. 495, 127 So.2d 851, 858 (1961). *See, supra,* Part II.

ty of the goods to be sold) may nonetheless satisfy the Statute. Fla.Stat.Ann. § 672.2–201(1) (West 1966). An adequate memorandum "may be in almost any possible form." *Rank v. Sullivan,* 132 So.2d 32, 36 (Fla.Dist. Ct.App.1961) (Will as evidence of contract to sell securities). *See Bader Brothers Transfer & Storage, Inc. v. Campbell,* 299 So.2d 114, 115 (Fla.Dist.Ct.App.), *cert. denied,* 304 So.2d 450 (Fla.1974) (Trucking settlement sheets); *Ashland Oil, Inc. v. Pickard,* 269 So.2d 714, 721–22 (Fla.Dist.Ct.App. 1972) (Telegram and handwritten contract); *Heinl v. Fulmer-Vance, Inc.,* 255 So.2d 281, 283 (Fla.Dist.Ct.App.1971) (Lease). The Uniform Commercial Code Official Comment No. 1 explains that:

> Only three definite and invariable requirements as to the memorandum are made by this subsection. First, it must evidence a contract for the sale of goods; second, it must be "signed," a word which includes any authentication which identifies the party to be charged; and third, it must specify a quantity.

■ Appellant relies upon the Wackenhut purchase order as a sufficient writing to satisfy the Statute. Judged by the above standards, the purchase order clearly meets the last two requirements: there is no doubt that it was signed by an authorized employee of the appellee (see Record on Appeal, vol. II, at 176), nor that it correctly specifies the quantity of goods to be sold. Regarding the first requirement, the purchase order does evidence a contract. The question, however, is a contract between whom, appellant and appellee or appellee and Jackson & Church? Florida allows parol evidence to explain and identify the contract to which a particular document refers. *Ashland Oil, Inc. v. Pickard,* 269 So.2d 714, 722 (Fla.Dist.Ct.App.1972) (dictum); *Heffernan v. Keith,* 127 So.2d 903,

904 (Fla.Dist.Ct.App.1961). In *Heffernan,* the plaintiff sent to a broker a statement of acceptable terms, and, after oral negotiations with the broker, the defendant sent a telegram to the broker accepting for a stated net price certain ambiguously identified property. The Florida court held that the Statute of Frauds was satisfied by the two documents as identified, explained, and connected by the oral testimony of the broker.

■ In the present case, various invoices, Jackson & Church's purchase order, and other documents, viewed in the light of the testimony of the appellant's president,[9] might connect the Wackenhut purchase order to a contract between the appellant and the appellee. This is a question of fact much akin to the issue of whether there was any contract between the appellant and the appellee. The record reveals that there is indeed a genuine issue of fact as to whether the Wackenhut purchase order evidences a contract between the appellant and the appellee. The history of the negotiations, Wagner's testimony on the outcome of those negotiations, Wagner's explanation of the price differences between the purchase orders, the course of dealing among the parties, and the sequence in which the documents were issued all support an inference that the Wackenhut purchase order reflects an agreement between the appellant and the appellee. Summary judgment for the defendant based on the Statute of Frauds is therefore inappropriate.

### 2. Agency of Jackson & Church.

■ Furthermore, there is a second reason why the Wackenhut purchase order precludes summary judgment based on the Statute of Frauds. Even if the purchase order does not embody the oral contract

---

**9.** As this matter is before the court on review of an order on a motion for summary judgment, only evidence that was presented to the district court in support or opposition of that motion can be considered now. *See, supra,* n.7. The deposition testimony of the appellant's president, Jesse Wagner, which discussed the documentary aspects of the transaction, is a part of the summary judgment record.

A representative of Jackson & Church might have provided the best overview as to what the various purchase orders and other documents reveal. Such testimony, regrettably, has not been offered by either party and our decision is therefore based only on the depositions and other evidence in the record. The parties, of course, may introduce such testimony at trial.

between the appellant and appellee, but in fact reflects further negotiations and a separate agreement between the appellee and Jackson & Church (*i.e.*, consistent with the two or three contract theories of the case), the appellant may still rely on the Wackenhut purchase order to overcome the Statute of Frauds if Jackson & Church was acting, at least in part, as the appellant's agent for the limited purpose of negotiating with, billing to, and collecting from the appellee. *See, generally, Shanklin v. Allis-Chalmers Manufacturing Co.*, 254 F.Supp. 223, 225–26 (S.D.W.Va.1966) (limited agency), *aff'd on other grounds*, 383 F.2d 819 (4th Cir. 1967). Under the theory that Jackson & Church acted as the appellant's agent for the limited purposes of negotiation, delivery, billing and collection, the purchase order might primarily concern an agreement between Jackson & Church and the appellee (*i.e.*, one of three contracts), while nonetheless incidently evidencing a contract between appellant and appellee (*i.e.*, another of the three contracts, the third of which being the agency agreement between appellant and Jackson & Church—*see, supra*, Part III(A)).

■ The appellant's First Amended Complaint alleges that Jackson & Church was acting as appellant's agent, and appended as an exhibit to the First Amended Complaint is the complaint filed against Jackson & Church charging breach of duty as an agent. Since the appellant's First Amended Complaint and its complaint against Jackson & Church were not sworn, the appellant could not rely upon these documents to resist summary judgment on this point *if the appellee's motion was properly supported. Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157–58 nn.16 & 17, 90 S.Ct. 1598, 1608–09 nn.16 & 17, 26 L.Ed.2d 142 (1970); Fed.R.Civ.P. 56(e). The appellant's First Amended Complaint and the appended Complaint against Jackson & Church were sufficient, however, to raise a legal issue (*i.e.*, agency), and thereby imposed on the appellee the burden to show that the facts underlying this issue were not disputed. *See Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611–12 (5th Cir. 1967). *See also Dalke v. Upjohn Co.*, 555 F.2d 245, 248–49 (9th Cir. 1977).

■ The appellant had no written contract with Jackson & Church creating a general or limited agency. Florida law, however, permits an agency relationship to be inferred from the conduct of the parties in light of the surrounding circumstances. *Thomkin Corp. v. Miller*, 156 Fla. 388, 24 So.2d 48, 49 (1945); *Lan-Chile Airlines, Inc. v. Rodriguez*, 296 So.2d 498, 500 (Fla.Dist. Ct.App.1974). While the supporting depositions submitted by the appellee demonstrate that the appellant exercised no control over Jackson & Church in the installation and maintenance of the camera system, and thus in this regard Jackson & Church was not the appellant's agent, the appellee's moving papers wholly fail to address the issue of whether Jackson & Church acted as appellant's agent for the limited purposes of final negotiation, delivery, billing, and collection.

■ The appellee points to deposition testimony that Jackson & Church was a dealer of the appellant's equipment, that Jackson & Church had on other occasions bought goods from the appellant for inventory or resale, and that the appellant's president generally defined a dealer as one who bought goods at a discount and then resold the goods at retail prices. None of this, however, is conclusive of Jackson & Church's role in the present transaction. These facts, when considered in the total circumstances of the case and in the light most favorable to the appellant (*i.e.*, the party opposing summary judgment), do not foreclose the reasonable inference that for this particular transaction Jackson & Church acted for certain limited purposes as the appellant's agent. The appellee has offered no direct proof that such a limited agency did not exist. The difference in price as listed in the two purchase orders can be explained, and indeed was explained in Jesse Wagner's deposition, as reflecting the additional cost of the installation and maintenance services to be provided by Jackson & Church. That Jackson & Church ultimately sold to the appellee a camera

system manufactured by one of the appellant's competitors equally suggests that Jackson & Church might have breached its agency duties to the appellant as well as that no agency relationship ever existed. Questions on the existence and scope of an agency generally involve issues of material fact reserved for determination by the jury. *See, e.g., Financial Fire & Casualty Co. v. Southmost Vegetable Cooperative Association,* 212 So.2d 69, 71 (Fla.Dist.Ct.App. 1968).[10] The fact issues underlying whether Jackson & Church in this case served as a limited agent for the appellant were not addressed, let alone resolved, by the appellee's motion for summary judgment. The appellee, therefore, has not met its initial burden of proof for obtaining summary judgment.

### 3. Specially Made Goods.

Finally, there is a third reason why the appellee could not obtain summary judgment based on the Statute of Frauds. As noted above, the Statute does not apply "if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business." In opposing the motion for summary judgment, the appellant argued that the cameras in question are such specially made goods.[11] The district court rejected this argument on the ground that "[s]ince IET's [*i.e.,* appellant's] normal operations consist of designing, manufacturing, and selling low-light level closed-circuit television cameras and related night-viewing devices, it would appear that the cameras, indeed, were *not* specially manufactured within the meaning of the statute" (emphasis in original).[12]

If the district court meant by this assertion that as a factual matter there must be a ready market for these cameras because appellant is regularly in the business of making them (*i.e.,* supplying this market), then the district court's reasoning ignores the substantial possibility that the appellant, as part or all of his business operations, manufactures custom-made cameras suitable for use by and sale to only the immediate buyer. If the district court meant that as a matter of statutory interpretation the cameras were not *specially* manufactured because the appellant as part of his normal business operations *ordinarily* builds custom-made products, then this reasoning ignores the purpose underlying the statutory exception for specially-made goods. The Statute exempts contracts involving "specially manufactured" goods

---

**10.** The determination of whether a genuine issue of fact exists and ultimately whether summary judgment is appropriate, of course, is a matter of federal law. What facts are material to a particular claim or issue of substantive law in a diversity case is a matter of state law. Thus, the extent to which factual questions in general predominate a particular issue of substantive law in a diversity case will necessarily be heavily influenced by state law. *Lighting Fixture & Electric Supply Co. v. Continental Insurance Co.,* 420 F.2d 1211, 1213 (5th Cir. 1969); 10 C. Wright & A. Miller, *Federal Practice & Procedure* § 2712 (1973).

**11.** In addressing the question of whether these goods were specially manufactured, the appellee's brief contains two incorrect statements concerning the controlling rules of procedure. First, appellee observes that the appellant did not allege in its complaint that the goods were specially manufactured, presumably implying that the appellant could not assert this claim in resisting summary judgment. Brief of Appellee at 8–9. Aside from the fact that the pleadings may be deemed amended to conform to the proof on a motion for summary judgment, *Put-*

*nam v. Williams,* 652 F.2d 497, 499 (5th Cir. 1981), the Statute of Frauds is an affirmative defense to be raised and pleaded by the defendant (*i.e.,* the appellee). Fed.R.Civ.P. 8(c). Second, the appellee asserts that the appellant had the burden of proving that the goods were specially manufactured. Brief of Appellee at 9. This misstates both the nature of the inquiry and the burden of proof at this stage of the proceedings. On a motion for summary judgment, the inquiry is whether there is a genuine issue as to some fact and the burden of proving the absence of such a factual dispute is on the movant (*i.e.,* the appellee here). *See, supra,* Part II.

**12.** The district court also concluded in the alternative that even if the cameras were specially manufactured goods, they were produced at the behest of Jackson & Church. This basis for summary judgment (*i.e.,* the argument that appellant only contracted with Jackson & Church and not with the appellee) has already been discussed and rejected. *See, supra,* Part III(A).

from the writing requirement because in these cases the very nature of the goods serves as a reliable indication that a contract was indeed formed. Where the seller has commenced or completed the manufacture of goods that conform to the special needs of a particular buyer, and thereby are not suitable for sale to others, not only is the likelihood of a perjured claim of a contract diminished, but denying enforcement to such a contract would impose substantial hardship on the aggrieved party (*i.e.*, a seller is left with goods that are difficult or impossible to sell to others; a buyer may have difficulty locating an alternative supply of the goods). The unfairness is especially acute where, as in the present case, the seller has incurred substantial, unrecoverable expense in reliance on the oral promise of the buyer. The term "specially manufactured," therefore, refers to the nature of the particular goods in question and not to whether the goods were made in an unusual, as opposed to the regular, business operation or manufacturing process of the seller. That the seller may be in the business of manufacturing custom designed and made goods does not necessarily preclude his goods from being deemed "specially manufactured" within the meaning of this exception. The crucial inquiry is whether the manufacturer could sell the goods in the ordinary course of his business to someone other than the original buyer. If with slight alterations the goods could be so sold, then they are not specially manufactured; if, however, essential changes are necessary to render the goods marketable by the seller to others, then the exception does apply. *See Erving Paper Mills v. Hudson-Sharp Machine Co.*, 332 F.2d 674, 678 (7th Cir.), *cert. denied*, 379 U.S. 946, 85 S.Ct. 440, 13 L.Ed.2d 544 (1964).

 Other than testimony that the appellant is in the business of manufacturing and selling cameras of this general kind, the appellee introduced very little evidence to support his contention that these cameras were not "specially manufactured" goods. Appellee argues that the appellant has made little or no effort to sell the cameras to another buyer. Brief of Appellee at 6.

The deposition testimony cited on this point, however, reveals that the appellant could not resell the cameras because they had been specially adapted to adjust automatically to the extreme nighttime darkness at the Wackenhut residence and to the glaring daytime sunlight reflecting off the beach and the sea. Record on Appeal, vol. II, at 161–63. Indeed, the deposition testimony of Jesse Wagner contains numerous references to the specialized nature of the cameras themselves (*id.* at 126, 133–35, 144–45, and 149–50), the manufacturing process (*id.* at 125–26, 132–33, and 150), and the market for them (*id.* at 125–26 and 161–63). The depositions, as well as the briefs submitted on the motion for summary judgment, raise the legal issue of whether the Statute of Frauds exception for specially manufactured goods applies in this case. The appellee has made virtually no attempt to show the absence of a genuine issue of fact with respect to this issue, and thus has failed to carry its initial burden. Moreover, the depositions themselves more than amply raise a genuine question of fact regarding whether the cameras were specially manufactured within the meaning of § 672.2–201(3)(a). On this record, the appellee could not properly obtain summary judgment based on the Statute of Frauds.

## IV. CONCLUSION

For the foregoing reasons, we conclude that the district court erred in granting summary judgment for the defendant. Issues of material fact remain as to whether there was an oral contract between the appellant and the appellee and as to whether the requirements of the Statute of Frauds have been satisfied. For these reasons, the judgment of the district court is

**REVERSED AND REMANDED.**