James E. HERBERT, Plaintiff-Appellant,

v.

BIRMINGHAM–JEFFERSON CIVIC
CENTER AUTHORITY,
Defendant-Appellee.

No. 82–7148
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Dec. 20, 1982.

Gordon, Silberman, Loeb, Cleveland & Gordon, Charles Cleveland, Birmingham, Ala., for plaintiff-appellant.

Foster, Conwell & Bolton, W.W. Conwell, Raymond P. Fitzpatrick, Jr., Birmingham, Ala., for defendant-appellee.

Before TJOFLAT, JOHNSON and HATCHETT, Circuit Judges.

PER CURIAM:

James Herbert appeals from a grant of summary judgment to defendant Birmingham-Jefferson Civic Center Authority ("Authority") below. This is a diversity action, and under Alabama law Herbert cannot recover if he is a "general contractor." The record, however, indicates that there is a genuine issue of material fact as to whether Herbert is a "general contractor."

In early 1977, Herbert, doing business under the trade name "Total Concepts" from his office in Illinois, learned that the Authority was considering installing a restaurant in the civic center owned by it. After meeting with Mr. E.A. Casey Jones, the executive director of the Authority, Herbert prepared a schematic floor plan layout for the proposed restaurant, showing the location of tables, chairs, kitchen equipment, etc. He presented this plan shortly thereafter to the board of directors of the Authority.

In the middle of 1977, Herbert and the Authority reached an oral agreement. The initial agreement called for Herbert to design the restaurant, furnish and install the equipment, and generally supervise all aspects of the project other than construction. Later the agreement was revised, at the request of the Authority, to include the construction trades. Under this agreement, Herbert was to be responsible for all aspects of the project, guaranteeing a completed facility for $871,000. At its November 10, 1977, meeting, the board approved

the plan to build the restaurant at a cost not to exceed $875,000. At the board meeting on March 23, 1978, proposals from two prospective operators of the restaurant were discussed. The board adopted a resolution to proceed with the construction of the restaurant. When asked what his fee would be if at any time the board decided not to proceed with the restaurant, Herbert replied that it would be negotiated on the basis of his time.

At the April 19, 1978, board meeting Herbert presented a four page "General Agreement," dated January 18, 1978, which contained four schedules: A, B, C, and D.[1] At the meeting the board authorized its chairman to execute an agreement with Herbert based on the schedules, subject to the approval of its attorney. On May 26, 1978, Herbert wrote a letter to the Authority confirming their agreement, attaching a copy of the January 18 schedules. This letter was signed by the board at its July 11, 1978, meeting. Herbert testified that, when he signed the May 26 letter, he considered that he was obligating himself to "build a restaurant for $871,000 complete." The letter stated that a more formal contract would be drafted to set out more completely Herbert's duties and responsibilities. A contract was drafted but never signed; the draft describes Herbert as a "consultant and advisor to the Authority."

In late August or early September of 1978 the board became dissatisfied with Herbert's work and at its September 6, 1978, meeting voted to terminate the contract with him. Herbert filed suit claiming damages for breach of the agreement and money owed for work and labor completed. Defendants moved for summary judgment based on the pleadings, the deposition of Herbert (with exhibits), Herbert's answers to interrogatories, and briefs from both parties. The district court granted summary judgment to the Authority on the grounds that the contract sued on was void and

unenforceable because of the admitted fact that Herbert did not comply with the Alabama general contractor liability law, Code of Alabama §§ 34–8–1 et seq. (1975).

The Code of Alabama § 34–8–6 (1975) prohibits any person from engaging in the business of general contracting without a license. A general contractor is defined in Section 34–8–1:

> For the purpose of this chapter, a "general contractor" is defined to be one who, for a fixed price, commission, fee or wage, undertakes to construct or superintend the construction of any building, highway, sewer, grading or any improvement or structure where the cost of the undertaking is $20,000.00 or more, and anyone who shall engage in the construction or superintending the construction of any structure or any undertaking or improvements above mentioned in the state of Alabama, costing $20,000.00 or more, shall be deemed and held to have engaged in the business of general contracting in the state of Alabama.

If any person performs work within this definition and fails to obtain a general contractor's license, the contract must be declared null, void, and unenforceable. *Hawkins v. League*, 398 So.2d 232 (Ala.1981).

It is undisputed that the cost of the restaurant was greater than $20,000. However, there are other prerequisites of Section 34–8–1 that Herbert contends are not applicable to his relationship with the Authority. One is the requirement that the work must be done for a fixed fee. The agreement between Herbert and the Authority provided that he would be compensated by a fixed fee, but he also stated to the board that, if it decided not to complete the restaurant, his fee would be negotiated on the basis of his time. The second is the type of work covered by the statute. The crux of Herbert's argument is that the work he agreed to do is not the type of

1. Schedule A, entitled "Design Planning for Construction Trades," includes preparation of floor plan layouts and bid specifications for all trades. Schedule B, "Interior Design," describes interior decoration of all equipment. Schedule C, "Equipment Brokerage," includes the purchase of equipment as well as the supervision of its installation and job site inspections. Schedule D provides for on-the-job supervision of all trades, mechanical and general.

work contemplated by the statute. He contends that, even if a portion of his work is covered by the statute, he was acting in the role of an advisor or consultant to the Authority rather than as a general contractor.

There is little case law interpreting Section 34–8–1. In *Dixie Store Fixtures & Sales Company v. Supreme Fixture Company*, 376 So.2d 703 (Ala.1979), the Supreme Court of Alabama affirmed a trial court holding that a company which supplied and installed food service equipment was not required to be a general contractor under Section 34–8–1. However, the court did not explicate its reasoning, stating that its decision was based on the *ore tenus* rule.

Summary judgment should be entered only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In assessing whether the movant has met this burden, all evidence introduced and all factual inferences from it must be viewed in the light most favorable to the party opposing the motion. *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1031 (5th Cir.1982). This Court must apply the same standard in reviewing a decision granting or denying summary judgment. 669 F.2d at 1030. At issue here is whether the development of a restaurant within an existing building is the type of improvement envisioned by the statute. If the development of the restaurant is covered by the statute, it must then be ascertained whether Herbert acted only as a consultant or as a general contractor.

The parties dispute whether their contract required Herbert to perform general contracting work. The contract, based on the May 26 letter and Schedules A–D, does not define Herbert's role. The lower court acknowledged that if the agreement had included only Schedules A–C Herbert may have been exempt from Section 34–8–1 under *Dixie Stores, supra.* It based the grant of summary judgment on Schedule D in

which Herbert agreed to supervision of contract bidding and job supervision of all trades. Herbert contends that even with regard to Schedule D he was acting as an advisor or consultant rather than as a general contractor. Although at least some work had been performed under Schedules A–C, none had been performed under Schedule D. Furthermore, the record contains various descriptions of Herbert's position.[2] Viewing this evidence in the light most favorable to Herbert, it is clear that whether he was acting as a general contractor is a genuine issue of material fact. Therefore, the judgment of the district court granting summary judgment must be REVERSED and the case REMANDED for further proceedings.

---

**2.** Herbert described himself as a broker, a coordinator or agent for the board, a consultant, and a general contractor. The board, in its meetings and documents, described Herbert as a consultant, advisor, designer, and contract coordinator.