930 F.2d 34
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
Majir KORNBLIT, an individual, Pat Wilsey, an individual,
Abe Barber, an individual, Ralph W. Burnett, an individual,
Joe Esco Tire Company, a corporation, Frank Merrill, an
individual, Jimmie R. Phagan, an individual, Plaintiffs-Appellants.
v.
C.W. CAMERON, an individual, William M. Cameron, an
individual, Linda Cameron, an individual, Commercial Bank,
N.A., a national banking association, Commercial Bankstock,
a corporation, American Fidelity Corporation, a corporation,
Federal Deposit Insurance Corporation, a corporation, John
Rex, an individual, Steve Garrett, an individual, Defendants-Appellees,
and
Jim D. Scott, an individual, Roger Laubauch, an individual,
Henry B. Boecking, III, an individual, Robert T. Helm, an
individual, Louis H. Brigham, an individual, Earl C.
Madison, II, an individual, James A. Smelzer, an individual,
Harry Merson, an individual, Defendants.
Majir KORNBLIT, an individual, Pat Wilsey, an individual,
Abe Barber, an individual, Ralph W. Burnett, an individual,
Joe Esco Tire Company, a corporation, Frank Merrill, an
individual, Jimmie R. Phagan, an individual, Plaintiffs-Appellees,
v.
C.W. CAMERON, an individual, William M. Cameron, an
individual, Linda Cameron, an individual, Commercial Bank,
N.A., a national banking association, Commercial Bankstock,
a corporation, American Fidelity Corporation, a corporation,
John Rex, an individual, Steve Garrett, an individual,
Defendants-Appellants.
 Nos. 89-6429, 90-6081.
 United States Court of Appeals, Tenth Circuit.
 Feb. 28, 1991.
 
 Before LOGAN, JOHN P. MOORE and BALDOCK, Circuit Judges.
 ORDER AND JUDGMENT*
 LOGAN, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cases are therefore ordered submitted without oral argument.
 
 
 2
 Plaintiffs filed suit alleging that defendants, through their agents, made fraudulent misrepresentations regarding the financial health of a banking institution involved in a stock purchase in order to obtain financial backing. The district court granted defendants summary judgment on all claims. Plaintiffs appeal that ruling. Defendants cross appeal the district court's denial of their motion for sanctions. We affirm the district court in all respects.
 
 
 3
 In 1985, David Durrett and Miles Mitzner approached plaintiffs regarding an investment in the recapitalization of Commercial Bank, N.A., in Oklahoma City, Oklahoma. Durrett and Mitzner hoped to form a group of investors to purchase stock in Commercial Bank. At the time, Mitzner and Durrett were bank officers at Citizen's National Bank and Trust of Oklahoma City. All of the plaintiffs were customers of Citizen's Bank. Plaintiffs allege that statements Durrett and Mitzner made in 1985 misrepresented the financial condition of the bank and the risk involved in the investment.
 
 
 4
 In March 1986, plaintiffs received a private offering memorandum describing the financial condition of Commercial Bank. After they received it, each plaintiff signed a subscription agreement to purchase the stock. The memorandum carefully outlined the severe financial problems the bank faced. It also contained the following admonition:
 
 
 5
 NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION NOT CONTAINED IN THIS MEMORANDUM, AND ANY INFORMATION OR REPRESENTATION NOT CONTAINED IN THIS MEMORANDUM MUST NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE COMPANY.
 
 
 6
 II R. tab 110 at 6 (emphasis in original).
 
 
 7
 Durrett and Mitzner also approached defendants seeking investors for the recapitalization project. Although they first spoke with American Fidelity Corporation (AFC) representatives about the investment in 1985, none of the defendants committed to it until early 1986. American Fidelity Assurance Company ultimately invested $50,000 in the project. The individual defendants were officers of AFC. Defendants William and Lynda Cameron were AFC shareholders who invested $2,100,000 in the recapitalization. The AFC group held the vast majority of the stock in Commercial Bank. Despite the infusion of capital, the bank ultimately failed. The stock became worthless.
 
 
 8
 Plaintiffs filed this lawsuit in January 1989, asserting six claims for relief. They included: 1) violations of Sec. 10(b) of the Securities and Exchange Act of 1934 and Sec. 12(2) of the Securities Act of 1933; 2) RICO violations; 3) violations of the Oklahoma Securities Act; 4) violations of various banking and consumer credit laws; 5) common law fraud; and 6) breach of fiduciary duty.
 
 
 9
 The district court granted summary judgment based on the applicable statutes of limitations and plaintiffs' failure to submit any competent evidence that Durrett and Mitzner were agents of the defendants. The court also held that plaintiffs confessed the validity of defendants' summary judgment motion on the fourth cause of action dealing with consumer credit and banking laws.[1] After judgment was entered, defendants filed a motion for sanctions under Fed.R.Civ.P. 11 and Okla.Stat. tit. 71 Sec. 408(i).[2] The district court denied that motion. In their cross appeal, defendants assert that plaintiffs' claims were frivolous and that the district court abused its discretion in failing to grant fees and costs. We address each of these issues below.
 
 
 10
 * We review the grant of summary judgment de novo, applying the same standard used by the district court. Abercrombie v. City of Catoosa, 896 F.2d 1228, 1230 (10th Cir.1990). Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate only when there are no genuine issues of fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
 
 
 11
 With the exception of the RICO claim, all causes of action involved in this case are governed by a two year statute of limitations period that begins to run on the date that a plaintiff knew or should have known of the alleged fraud. The two year limitations period found in Okla.Stat. tit. 12 Sec. 95 governs plaintiffs' Sec. 10(b) claim. See Aldrich v. McCulloch Properties, Inc., 627 F.2d 1036, 1041 (10th Cir.1980) (most applicable state law statute of limitations governs period for federal securities violation because there is no federal limitations period). Section 95 also governs plaintiffs' fifth and sixth causes of action alleging common law fraud and breach of fiduciary duty. The two year limitations period found in Okla.Stat. tit. 71 Sec. 408(e) (before 1988 amendment) governs plaintiffs' claim under the Oklahoma Securities Act. Finally, 15 U.S.C. Sec. 77(m) provides a one year statute of limitations for the Sec. 12(2) claim in plaintiffs' first cause of action. The remaining RICO claim has a four year limitations period and therefore was timely filed.[3]
 
 
 12
 The limitations period in this fraud action began to run when plaintiffs discovered, or should have discovered, the alleged misrepresentations or omissions. See Feldman v. Pioneer Petroleum, Inc., 606 F.Supp. 916, 922 (W.D.Okla.1985), aff'd, 813 F.2d 296 (10th Cir.), cert. denied, 484 U.S. 954 (1987). The district court held as a matter of law that regardless of any misrepresentations, the March 1986 offering memorandum should have put plaintiffs on notice of any errors in Durrett and Mitzner's statements. II R. tab 110 at 8-9. We agree.
 
 
 13
 The offering memorandum was very explicit in describing the risks involved in the investment. It stated, in part:
 
 
 14
 THE PURCHASE OF THESE SECURITIES INVOLVES A HIGH DEGREE OF RISK.
 
 
 15
 * * *
 
 
 16
 * * *
 
 
 17
 As a result of an examination of the Bank performed by the Comptroller of the Currency (the "Comptroller") in the second quarter of 1985, the Bank became subject to an Order to Cease and Desist (the "Comptroller's Order"), which currently remains in effect.... The Bank is not currently in compliance with items (5), (9), (10), (14) or (16) of this paragraph [certain requirements of the Comptroller's Order].
 
 
 18
 * * *
 
 
 19
 * * *
 
 
 20
 On October 7, 1985, the Federal Deposit Insurance Corporation ("FDIC") issued its Findings of Unsafe and Unsound Practices and Condition and Order of Correction (the "FDIC Order") to the Bank.... Failure to comply with the FDIC Order may be grounds for cancellation of the FDIC deposit insurance coverage for the Bank.
 
 
 21
 * * *
 
 
 22
 * * *
 
 
 23
 In addition to those loans classified as "Loss" and directed to be charged off, the Comptroller's current examination has classified $825,370 in Bank assets as "Doubtful" and $6,038,580 in Bank assets as "Substandard". As a result, management believes that the Bank will sustain additional loan losses and write downs in assets acquired in foreclosure in an amount which reflects the risks associated with this high level of classified assets. Although the Bank has established an allowance for possible loan losses at a level which management believes will be sufficient to absorb additional losses, there can be no assurance that the allowance will be adequate. Further, the Bank's earnings have been and will continue to be affected adversely by its nonperforming assets and charges to income relating to additional provisions to its loan loss reserve.
 
 
 24
 * * *
 
 
 25
 * * *
 
 
 26
 THE UNAUDITED FINANCIAL STATEMENTS OF THE BANK INDICATE THAT THE BANK IS PRESENTLY INSOLVENT.
 
 
 27
 * * *
 
 
 28
 * * *
 
 
 29
 Id. at 6-7. These statements were in addition to the admonition against prior representations found in the memorandum.
 
 
 30
 When, as here, the offering memorandum explicitly sets out the risks involved, knowledge of the information contained within it will be imputed to the investor. Zobrist v. Coal-X, Inc., 708 F.2d 1511, 1518 (10th Cir.1983). Accordingly, the statute of limitations began to run in March 1986 when the plaintiffs received the offering memorandum. Because plaintiffs did not file the claims outlined above within two years of that date, they are barred. Thus, we need only consider the agency theory as it relates to plaintiffs' RICO cause of action.
 
 II
 
 31
 Although plaintiffs acknowledge that they never spoke to any of the defendants regarding the stock purchase, they assert that Mitzner and Durrett were acting as agents of the defendants when they made the alleged misrepresentations in 1985. In support, plaintiffs filed the affidavit of Donald Fitzgerald, an attorney for one of the plaintiffs. In that affidavit, Fitzgerald states that Durrett told Fitzgerald and plaintiff Kornblit that Durrett was acting as an agent for "C.W. Cameron, his family and corporate interests." II R. tab 110 at 10.
 
 
 32
 The party who asserts the existence of an agency has the burden of proving it. See Atchison, T. & S.F. Ry. v. Bouziden, 307 F.2d 230, 233 (10th Cir.1962). Absent corroborating evidence, statements of an alleged agent are generally inadmissible to establish the agency relationship. Jones v. World Publishing Co., 512 P.2d 124, 127-28 (Okla.1973); see also 3 C.J.S. Agency Sec. 516 (1973). Here, there is no such corroborating evidence. The Fitzgerald affidavit is therefore inadmissible.
 
 
 33
 We likewise reject plaintiffs' argument that Fitzgerald's statements fall within two exceptions to the hearsay rule. First, they assert that the affidavit is admissible under Rule 801(d)(1)(A) or (B) as a prior consistent or inconsistent statement. Second, they argue that it is independently admissible under Rule 801(d)(2)(C), (D), or (E) as an admission of a party opponent.
 
 
 34
 Fitzgerald's statement cannot come within the exception for prior consistent or inconsistent statements.[4] The statement contained in the Fitzgerald affidavit was not made under oath. Moreover, the affidavit cannot be used as a prior consistent statement at this stage of the proceedings. The record contains no evidence here of improper motive or recent fabrication. Plaintiffs' attempts to prophesy what Durrett's testimony would be at trial in order to bring the statement within the rule are unavailing.
 
 
 35
 Likewise, the Fitzgerald affidavit is not an admission of a party opponent.[5] The record contains no evidence to support plaintiffs' assertion that defendants either authorized statements made to Fitzgerald or adopted them. Furthermore, there is nothing to support plaintiffs' assertion that Durrett was somehow conspiring with defendants or was working for them.
 
 
 36
 In their brief on appeal, plaintiffs also argue that the deposition testimony of Jimmie R. Phagan "show[s] an agency status on the part of Durrett." Brief of Appellants at 15. Because plaintiffs never submitted Phagan's depositions to the district court,[6] we refuse to consider those depositions as evidence of Durrett's alleged agency status. See Whitlock v. Duke Univ., 829 F.2d 1340, 1343 (4th Cir.1987) (refusing to consider on appeal depositions "taken prior to the granting of summary judgment below but not submitted to the district court before summary judgment was entered"); see also Frito-Lay, Inc. v. Willoughby, 863 F.2d 1029, 1035-36 (D.C.Cir.1988) (appellate court may not consider evidence not before district court at time summary judgment was granted); Dominick v. Dixie Nat'l Life Ins. Co., 809 F.2d 1559, 1573 (11th Cir.1987) (same); Impossible Elecs. Techniques, Inc. v. Wackenhut Protective Sys., 669 F.2d 1026, 1034 n. 9 (5th Cir.1982) (same). We therefore conclude that the district court appropriately granted summary judgment in favor of defendants.
 
 III
 
 37
 Finally, we turn to defendants' cross appeal. They seek fees and costs under both Fed.R.Civ.P. 11 and Okla.Stat. tit. 71 Sec. 408(i). Section 408(i) allows a court to assess reasonable attorney's fees if it determines that a plaintiff's case is "without substantial merit." The district court denied defendants' motion under both provisions. We review this decision under an abuse of discretion standard. See Adamson v. Bowen, 855 F.2d 668, 673 (10th Cir.1988). Using this standard, we must give the district court's decision considerable deference. See Crabtree ex rel. Crabtree v. Muchmore, 904 F.2d 1475, 1478 (10th Cir.1990). Indeed, "[i]t is not the role of the circuit court to second-guess" a district court's decision to deny sanctions. See Hughes v. City of Fort Collins, No. 90-1205, slip op. at 6 (10th Cir. Feb. 25, 1991).
 
 
 38
 The district court found that plaintiffs could have conducted a reasonable investigation and still not predicted the court's ruling on the statute of limitations issue. We agree. Plaintiffs' conduct must be judged under an "objective reasonableness" standard. See Burkhart ex rel. Meeks v. Kinsley Bank, 804 F.2d 588, 590 n. 3 (10th Cir.1986). In the district court, plaintiffs asserted that they agreed to invest before receiving the offering memorandum and that they did not believe the memorandum altered the basic agreement. Based on this reasoning, they argued that the offering memorandum was not dispositive of the statute of limitations issue. In light of such reasoning, we will not second-guess the district court's decision to deny the instant sanctions motion.
 
 
 39
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Plaintiffs have not appealed this portion of the district court's ruling
 
 
 [2]
 This provision formerly was found at Okla.Stat. tit. 71 Sec. 408(f)
 
 
 [3]
 Civil RICO claims are generally subject to a four year limitations period. See Agency Holding Corp. v. Malley-Duff & Assocs., 483 U.S. 143, 156 (1987); Bath v. Bushkin, Gaims, Gaines & Jonas, 913 F.2d 817, 820 (10th Cir.1990). The earliest accrual for the RICO action alleged in this case was March 1986. Because plaintiffs filed that cause of action in January 1989, it is timely
 
 
 [4]
 Fed.R.Evid. 801(d)(1)(A) and (B) state:
 (d) Statements which are not hearsay. A statement is not hearsay if--
 (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive....
 
 
 [5]
 Under Fed.R.Evid. 801(d)(2), a statement is not hearsay if:
 The statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.
 
 
 [6]
 Plaintiffs referred to Phagan's deposition testimony in their brief in opposition to defendants' motion for summary judgment. See I R. tab 74, Brief in Support at 2-4. Plaintiffs, however, never filed Phagan's depositions with the district court. In an order dated March 19, 1990, we denied plaintiffs' motion to supplement the record with those depositions