Rudolph COLEMAN

v.

The HERTZ CORPORATION.

Civ. No. C82–1428.

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 19, 1983.

Rudolph Coleman, pro se.

Donald M. Fain, Charles A. Wiley, Jr., Fain, Gorby, Reeves & Moraitakis, P.C., Atlanta, Ga., for defendant.

## ORDER

ORINDA D. EVANS, District Judge.

This employment discrimination case, brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, is before the Court on the Defendant's motions for a protective order and for summary judgment. The Plaintiff, Rudolph Coleman, who is black, was discharged in November 1981 from his position as a senior station manager of the Hertz rent-a-car facility at the Atlanta airport. He filed charges of race discrimination with the Equal Employment Opportunity Commission (EEOC) that same month. The EEOC found no probable cause to believe any discriminatory acts occurred and sent Mr. Coleman a right-to-sue letter in June 1982.

Mr. Coleman filed this complaint, alleging race discrimination, in July 1982. He claims that he was harassed on the job; that he was paid less than white employees in the same position; that he was not promoted to assistant city manager; and that he was discharged for discriminatory reasons. He seeks backpay and reinstatement to his former position.

Hertz denies that it has taken any employment actions against Mr. Coleman for discriminatory reasons. It asserts that he was not promoted and was terminated for inadequate job performance. Hertz has moved for summary judgment in its favor and has offered the supporting affidavits of Mr. Coleman's two immediate supervisors. Hertz has also filed a counterclaim, alleging that Mr. Coleman sued it in bad faith to harass it and to cause it trouble and expense. Hertz has requested $10,000 in compensatory damages, $5000 in punitive damages, and attorneys' fees. Mr. Coleman's response to this counterclaim is that Hertz is attempting to terrorize him into dismissing his suit, and should be compelled to pay his attorneys' fees because it has filed its counterclaim in bad faith.

Hertz has also moved for a protective order to relieve it of the obligation to respond to discovery requests it received after the discovery period had ended. Because the Court denies Hertz summary judgment, the Court addresses the motion for a protective order and denies Mr. Coleman discovery pursuant to the four interrogatories and the request for production of documents that he sent to Hertz on May 2, 1983.

Motion for Summary Judgment

Rudolph Coleman began working for the Hertz Corporation in June 1979 as a rental car representative at the Atlanta airport. Two weeks later he was promoted to station manager, and in April 1981 John Bruce Quick, the city manager and Mr. Coleman's immediate supervisor, promoted him to senior station manager. Mr. Coleman then became one of four management personnel.

The other three were white. The four reported directly to Mr. Quick, who in turn reported to Michael E. Gravel, the Atlanta Area Manager. Both Mr. Quick and Mr. Gravel are white.

As senior station manager, Mr. Coleman was responsible for the entire rental operation on his shift, including counter service, reservations, bus service, and garage operations. Among his responsibilities was to insure that rental vehicles were kept in top condition. One week after Mr. Coleman's promotion to senior station manager, the Atlanta airport rental fleet failed a periodic "standards audit." The glove compartments, inside windows, and ash trays of the vehicles were dirty, and their windshield washer fluid, oil, and battery levels were low. Mr. Quick sent a memorandum to all four management personnel, directing them to furnish him the plans they would follow on their respective shifts to insure that the fleet pass future audits. Mr. Coleman did not submit a written plan of action. Mr. Gravel labels this in his affidavit as a serious breach of responsibility.

Five weeks later, the fleet failed a second audit. Mr. Quick sent Mr. Coleman a memorandum admonishing him that "[u]ntil ... our vehicle condition is back up to standard, I will expect vehicle condition to be your prime area of concern. I want your action plan for this area by Friday, May 29, 1981.... I requested the same information from you after the last Standards Audit and I have never received a reply. This lack of concern on your part, I'm sure contributed to our poor performance on this audit." As an example of an action plan, Mr. Quick attached a copy of his own plan for improving the condition of the fleet.

Mr. Quick then met with the four management personnel. He instructed Mr. Coleman at that meeting to personally inspect three cars daily, or else face disciplinary action. A week and a half later, because Mr. Coleman had not been inspecting three cars daily, Mr. Quick sent him a warning letter that ended, "Your lack of concern will not be tolerated.... [I]f you fail to complete the 3 daily audits, you face disciplinary action up to and including discharge." Mr. Quick states in his affidavit that Mr. Coleman blamed the condition of the fleet on others and did not take corrective steps to eradicate the problem.

In June, when Mr. Coleman came to pick up his check in the middle of vacation, Mr. Quick informed him that he was due back to work on the coming Saturday. Mr. Coleman insisted that he would not return to work until the next Tuesday. He and Mr. Quick continued to argue, using abusive language to each other, even though Mr. Quick indicated that Mr. Coleman was facing disciplinary action. Mr. Quick finally told Mr. Coleman that he was fired for insubordination. Mr. Gravel states in his affidavit that refusal to follow Mr. Quick's instructions constituted gross insubordination, which is a firing offense because company morale and discipline suffer when word of insubordination spreads. Nonetheless, Mr. Quick reinstated Mr. Coleman at a meeting with Mr. Gravel and the personnel manager.

Mr. Quick later sent a letter to Mr. Coleman's home that explained, "Your attempt at usurping the authority of the City Manager and the abusive language that you used will not be tolerated.... Any future incident of this nature will result in severe disciplinary action, up to and including discharge." This letter was sent by certified mail, but it was returned to Mr. Quick because it went unclaimed. Mr. Quick had the letter redelivered, and Mr. Coleman received it over a month after it was written. The next day Mr. Coleman began to spread word at the airport facility of his problems with his superiors. He asked Mr. Gravel for the address and telephone number of the Vice President who supervised Mr. Gravel and Mr. Quick so that he could complain about Mr. Quick. Mr. Gravel met with Mr. Coleman and informed him that he was discharged. In his affidavit, Mr. Gravel attributed this discharge to Mr. Coleman's failure to follow instructions and inability to work with fellow employees. Mr. Coleman's separation notice states that

he was discharged for a poor and defensive attitude, inability to accept constructive criticism, and lack of respect for local management that caused unrest in the workplace.

At the meeting in which he was discharged, Mr. Coleman asked to be promoted to Assistant City Manager. Mr. Gravel refused because Mr. Coleman's problems as senior station manager made promotion "out of the question" and because Mr. Coleman could not work well under Mr. Quick.

Mr. Gravel decided, though, to give Mr. Coleman another opportunity with Hertz. He offered him a position as one of five used car salesmen. Mr. Coleman's sales, however, were below average. From August to November, his sales accounted for only 8.6% of total sales; each of the other four salesmen made at least 20% of total sales. Mr. Coleman was terminated after four months for lack of productivity and lack of interest in the work.

Mr. Coleman has presented documentary evidence to oppose Hertz's motion for summary judgment, but this evidence does not, in most cases, directly support his claims or directly contradict Hertz's position. Much of it seems intended to show a pattern of discrimination against black employees, although Mr. Coleman has sued only on his own behalf. He offers as evidence of a pattern of terminating blacks in management what appears to be Mr. Gravel's list of reasons for dismissing a former black station manager. He also offers a handwritten list of candidates for the city manager position, allegedly prepared by Mr. Gravel, which does not include black candidates. He himself lists five incidents illustrating what he believes to be discriminatory treatment of black employees. He includes an anonymous letter of harassment addressed to a black female employee. He also provides 1979 work schedules to show that one manager did not rotate work schedules with the others, and he alleges that this was because of age differences.

In reference to his own claims, Mr. Coleman shows that the other senior station manager received a merit salary increase to $17,000 in 1980, before he himself was promoted to senior station manager. The Court, though, cannot compare Mr. Coleman's initial salary as senior station manager to this merit-increased salary of the other senior station manager, who had been working in her position for two months after a demotion from a higher-paying job. The Court notes that the other senior station manager originally made the same salary as Mr. Coleman started with. Mr. Coleman also offers evidence that another senior station manager received in 1980 more than Mr. Coleman's starting salary for the same job. Hertz has explained this discrepancy; the other manager's salary was based on his prior experience with rent-a-car companies and his prior employment with Hertz. Mr. Coleman also provides the work record of a third employee who was hired after him but promoted before him. The employee's record shows, though, that he had previous employment experience with Hertz. Finally, Mr. Coleman provides copies of audits he performed on cars during a four-day period after he returned from his vacation and received Mr. Quick's warning letter.

 Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The Court should grant summary judgment only if the party seeking judgment demonstrates that there is no genuine issue as to any material fact, when all evidence is viewed in the light most favorable to the party opposing the motion. *Morrison v. Washington County,* 700 F.2d 678, 682 (11th Cir.1983). In ruling on the motion, the Court may not decide issues of fact. *Clemons v. Dougherty County,* 684 F.2d 1365, 1369 (11th Cir.1982). All reasonable doubts about the facts are to be resolved and all inferences from the facts are to be drawn in favor of the party opposing the motion. *Impossible Electronics Tech-*

*niques, Inc. v. Wackenhut Protective Services, Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982) (Former Fifth Circuit case). The party opposing the motion for summary judgment need not respond to it with affidavits or other evidence until the moving party carries its burden of showing that no material fact is in dispute. *Id.* If the moving party makes a convincing showing, however, the opposing party must demonstrate by receivable facts that a real controversy exists. *Mandalay Shores Cooperative Housing Association, Inc. v. Pierce*, 667 F.2d 1195, 1197 (5th Cir.1982) (Former Fifth Circuit case), *quoting Bruce Construction Corporation v. United States*, 242 F.2d 873, 875 (5th Cir.1957). Courts are reluctant, though, to grant summary judgment in employment discrimination cases when issues of discriminatory intent are raised because intent is often difficult to discern in advance of trial. *Bullard v. Omi Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir.1981) (Unit B case); *Hayden v. First National Bank of Mount Pleasant*, 595 F.2d 994, 997 (5th Cir.1979).[1]

Mr. Gravel's and Mr. Quick's affidavits, adduced by Hertz in support of its motion for summary judgment, offer a plausible explanation for the employment actions Hertz took against Mr. Coleman. Because all reasonable doubts and inferences are to be drawn in favor of Mr. Coleman, however, the Court declines to grant Hertz summary judgment. The Court is not convinced that Hertz's evidence dispels the possibility that its employment actions were motivated by a discriminatory intent. Examining the facts in a different light, the Court notes that Mr. Coleman's problems might be seen as stemming from personal difficulties with Mr. Quick. Hertz's evidence does not allow the Court to dismiss the possibility that a discriminatory animus motivated Mr. Quick's actions toward Mr. Coleman.

Mr. Gravel and Mr. Quick both state in their affidavits that Mr. Coleman's problems did not arise until April 1981, when he was promoted to a position requiring close coordination with Mr. Quick. At that time, Mr. Coleman had been working for Hertz for nearly two years. The first difficulties Mr. Coleman had with Mr. Quick concerned the airport facility's failure of the vehicle condition audit. Mr. Quick admits in his affidavit that this failure was not the fault of Mr. Coleman alone. Three other management personnel were apparently equally responsible for the condition of the rental vehicles. The airport facility failed its first audit only one week after Mr. Coleman's promotion to senior station manager and failed its second promotion five weeks later. Because Mr. Coleman had not been long at his job, and because he was not solely responsible for vehicle condition, the Court cannot conclude from the available evidence how much blame for the audit failure could reasonably have been ascribed to Mr. Coleman. Mr. Quick's negative evaluation of Mr. Coleman seems to rest more on Mr. Coleman's failure to submit a plan of corrective action and his failure to personally audit three vehicles a day. Mr. Coleman has submitted evidence, though, that he did inspect vehicles over a four-day period. The other major incident to which Mr. Gravel's and Mr. Quick's affidavits allude is the quarrel between Mr. Quick and Mr. Coleman over when Mr. Coleman would return from vacation. That Mr. Gravel reinstated Mr. Coleman after Mr. Quick announced his termination is an indication that this incident may have reflected the tension between Mr. Coleman and Mr. Quick more than Mr. Coleman's inability to perform well with others. Mr. Coleman's discharge from his position as senior station manager followed his public complaints about the letter he received from Mr. Quick and his request to Mr. Gravel for the address of Mr. Gravel's superior. The discharge could equally be viewed, though, as a demotion and transfer premised on Mr. Coleman's inability to get along with Mr. Quick. If Mr. Coleman had not been a

---

1. Decisions of the Fifth Circuit handed down before September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

good employee, there would have been no reason for Hertz to retain him. These speculations are not intended to be seen as possible findings of fact. The Court refers to them only to illustrate that doubts about the facts and alternate inferences from the facts presented survive Hertz's factual showing and, therefore, summary judgment is inappropriate. The Court is cognizant that it may not substitute its own judgment for Hertz's legitimate employment decisions and that it may not discount the importance of obedience to superiors and disciplinary measures to maintain company morale. Nor may the Court ignore the possibility that Mr. Coleman's repeated chances with Hertz were an act of grace. The Court is convinced, however, that the uncertainty in the record precludes the entry of summary judgment.

Motion for a Protective Order

Mr. Coleman began this lawsuit without an attorney in July 1982. In December, he retained counsel and requested additional time to conduct discovery and to file for summary judgment. The Court extended the time for discovery from January 3, 1983 to May 3 and ordered that motions for summary judgment be filed by June 2. On April 6, Mr. Coleman's attorney filed a motion for leave to withdraw as counsel. From that date, he ceased actively representing Mr. Coleman. He had advised Mr. Coleman over a month earlier that it would be necessary to do extensive discovery by the time the discovery period ended around May 1. The Court granted his motion to withdraw as counsel on May 16.

On May 2, Mr. Coleman sent to Hertz four interrogatories and a request for production of documents. Hertz contends that it received the discovery requests "several days after the close of discovery." Mr. Coleman asks for the names, addresses, and social security numbers of all management personnel in Hertz' Southeast Zone for the past fifteen years; full details of all lawsuits in which such managers have been involved; full details of all race discrimination claims brought against such managers; full details of the arrest and conviction of such managers; and all documentary evidence relevant to any issue in the case. Responding to the requests would require substantial investigation and would impinge on the privacy interests of Hertz employees who are not involved in Mr. Coleman's lawsuit. More importantly, the responses, although they might lead to admissible evidence, would not bear directly on Mr. Coleman's claims.

▮▮▮ Delay is a proper basis for denying discovery. See *Associated Metals & Minerals Corp. v. S.S. Geert Howaldt,* 348 F.2d 457, 459 (5th Cir.1965) (when libelants failed to seek discovery on jurisdictional question during six months preceding hearing on jurisdiction, oral request for discovery at time of hearing was properly denied); 4 J. Moore & J. Lucas, Federal Practice ¶ 26.69 & n. 24 (2d ed. 1983). Local rule 181.11 states: "Any desired discovery procedure shall be commenced promptly, pursued diligently, and completed without unnecessary delay...." Although Mr. Coleman is now once again proceeding *pro se,* he received adequate warning from counsel in ample time of the need to pursue discovery. Nonetheless, he admits that he did not mail his discovery requests to Hertz until the day before discovery ended. The Court is not satisfied that he pursued discovery diligently.

In this case, because Mr. Coleman has delayed inexcusably in presenting his discovery requests, because responding to the requests would cost Hertz considerable time and expense and would implicate the privacy interests of Hertz employees, and because the desired discovery would not clearly provide Mr. Coleman information relevant to his claims, the Court denies him discovery. *Compare Feir v. Carabetta Enterprises, Inc.,* 459 F.Supp. 841, 844 (D.Conn.1978) (because plaintiffs did not send interrogatories to defendants until two days before end of extended discovery period and because the information sought was not material to issues to be decided, plaintiffs were denied discovery).

For these reasons, Hertz's motion for summary judgment is DENIED. Hertz's

motion for a protective order to relieve it of the obligation to answer four interrogatories and a request for production of documents is GRANTED.