888 F.2d 345
 15 Fed.R.Serv.3d 104
 XEROX CORPORATION, Derivatively As A Shareholder of The
Genmoora Corp. Plaintiff-Appellant,
v.
GENMOORA CORP., et al., Defendants,
Michael J. Collins, Norman E. Brinker, Thomas W. Barton and
Bruns Grayson, Defendants-Appellees.
 No. 88-1446.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 17, 1989.
 
 A.B. Conant, Jr., David M. Pruessner, William B. Chaney, Shank, Irwin, Conant, Lipshy & Casterline, Dallas, Tex., Barry Jay Kesselman, Stamford, Conn., for plaintiff-appellant.
 David C. Godbey, Robert H. Mow, Jr., Hughes & Luce, Dallas, Tex., for Collins and Barton.
 Kenneth E. Carroll, Robert L. Blumenthal, Carrington, Coleman, Sloman & Blumenthal, Dallas, Tex., for Brinker and Grayson.
 Appeal from the United States District Court for the Northern District of Texas.
 Before BROWN, JOHNSON and DAVIS, Circuit Judges.
 JOHN R. BROWN, Circuit Judge:
 
 
 1
 In this shareholder derivative suit, Xerox challenges a series of transactions among the current sole director and four ex-directors of the Genmoora Corporation (Genmoora). It alleges that these transactions depleted the corporation's assets and resulted in the failure to fund a Liquidating Trust Fund established to receive the proceeds of a sale of all of Genmoora's assets to Moore Business Forms, Inc. (Moore).[1] The trial court dismissed Xerox's derivative suit under F.R.Civ.P. 12(b)(6) for failure to allege injury and alternatively granted summary judgment in favor of four of the ex-directors, finding they had not breached their fiduciary duties. At the request of the ex-directors, the trial court acted under F.R.Civ.P. 54(b) to convert these to final orders on May 23, 1988. We reverse, finding that: (1) The trial court's dismissal was in error. Xerox sufficiently pleaded injury. (2) The trial court abused its discretion in denying Xerox's Request for Continuance before the summary judgment and its Motion for Reconsideration of the grant of summary judgment and for Leave to Amend its Complaint in light of the additional evidence which Xerox had put before the court at that time.
 
 I. How It All Began
 
 2
 Genmoora used to operate a series of retail stores. But in 1984, it sold nearly all of its assets to Moore Business Forms, Inc. and planned to liquidate. To effectuate its liquidation, Genmoora created a Liquidating Trust Fund in July, 1985 to receive the cash proceeds from the sale and liquidation of Genmoora's remaining assets and to conserve these funds for their eventual distribution to shareholders. Norman E. Brinker (Brinker), Bruns Grayson (Grayson), Michael J. Collins (Collins), and Thomas U. Barton (Barton)--collectively the ex-directors--all became trustees of the liquidating trust.
 
 The Shell Game
 
 3
 In the game that was about to unfold, these ex-directors played important roles, but Joseph T. Verdesca (Verdesca)[2]--director, shareholder and President of Genmoora--was the kingpin. He also controlled or owned other entities involved in this case. Verdesca's true nature was known to the ex-directors. In a November 1984 letter Collins wrote to Brinker and Grayson references were made to Verdesca's incompetence and fraud in dealing with Genmoora's Board of Directors and shareholders.
 
 
 4
 Bottom line, it seems obvious to me that we are dealing not only with gross incompetence but also massive fraud as it relates to Joe Verdesca and his dealing with the Board of Directors and the shareholders.
 
 
 5
 * * *
 
 
 6
 * * *
 
 
 7
 I am totally convinced that Joe depreciated our asset through out and out fraud at best (with other financial questions yet to be answered about other funds and what he has done with them).
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 Currently, no one is looking after our interests, no one representing the Board, no one the shareholders. Joe is consciously stalling so he can get his hands on his unearned part of the funds. It would be totally irresponsible of us to give Joe a penny before we have fully investigated his culpability.[3]
 
 
 11
 Despite this knowledge, the ex-directors resigned and in a complex series of transactions orchestrated by Verdesca sold their shares to another Verdesca company, International Computer Clearing, Inc. (ICCI), on September 24, 1985.[4] The end result of these machinations was that the Liquidating Trust was allegedly never funded.
 
 
 12
 A jury could have determined that this is how it worked. The first step was for all the directors, except Verdesca, to resign. This occurred on September 24, 1985. This left Verdesca as the sole director of Genmoora on September 24. Being in sole command, he was then able to issue a corporate resolution authorizing Genmoora to loan $3,100,000.00--which represented practically all of the proceeds from the sale of assets to be held by the trustees for the benefit of all shareholders--to ICCI of which Verdesca is the President and sole shareholder. The loan was represented by ICCI's promissory note dated September 24, 1985 ostensibly backed by a security agreement of the same date. The security was something else. It consisted solely of ICCI's 1,566,905 shares of Genmoora stock.[5] All of those shares were purchased by ICCI from Brinker and Collins on September 24, 1985,[6] so they were the direct beneficiaries of Verdesca's well laid plan to get trust funds into the hands of the directors, not all the shareholders.
 
 
 13
 II. Where, Oh Where is the Record?
 
 
 14
 An important issue in this case is just what is the record at significant points in the procedural history. The evidence proffered by Xerox clearly meets the requirements of the Rule that, "[t]he original papers and exhibits filed in the district court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the district court shall constitute the record on appeal in all cases." F.R.A.P. 10(a).
 
 
 15
 Although much of the evidence was not before the district court at the time it entered its February 10 dismissal and summary judgment, the case was not yet over. The trial court was obliged to consider Xerox's motion for reconsideration of the order of February 10 and Xerox's request for leave to amend its complaint. There is absolutely nothing to the contention, raised by the ex-directors, that some of these orders are not reviewable by this court because Xerox may have referred to them, in its notice of appeal, by less than their full names. Our review of the final order, which is unquestioned, clearly encompasses the prior orders leading up to it.[7]
 
 
 16
 Refusal to grant reconsideration is tested under an abuse of discretion standard, but the Judge has to consider judicially the record as it exists at the time of the motion for reconsideration not just as it existed at the time of the initial ruling. Likewise our review comprehends the record at both stages.
 
 
 17
 Barton and Collins moved after oral argument to supplement the record pursuant to F.R.A.P. 28(j).[8] By their motion, Barton and Collins seek to inform this court that in the related case of Genmoora Corp. v. Moore Business Forms, Inc., No. CA3-85-0144-T (Moore I),[9] Genmoora has won a judgment in excess of $3,000,000.00.[10] The materials presented by the ex-directors certainly do not fall within F.R.A.P. 28(j) which is a vehicle for presenting, without argument, legal authority. This court simply takes notice of the fact that the information was presented without deciding its relevance. The information is not receivable as a fact to establish the theory the ex-directors argued in their motion. We also uphold our earlier denial of Xerox's request to supplement the record pursuant to F.R.A.P. 10(e) with facts it failed to present to the district court.
 
 
 18
 III. Summary Judgment and Dismissal on Pleadings
 
 
 19
 This case comes to us on appeal after the trial court, ruling on motions by the ex-directors,[11] dismissed both for (1) failure to state a claim upon which relief could be granted because Xerox failed to allege it or Genmoora suffered any injury,[12] and (2) an alternative total summary judgment as to the four ex-directors under F.R.Civ.P. 56(c) because Xerox failed to carry its burden of showing that the ex-directors were involved in the making of any loans to ICCI, Leopard's Head or any other entity controlled by Verdesca.[13] These were later made final judgments by the trial judge under F.R.Civ.P. 54(b). Both the dismissal and the grant of summary judgment are reviewed de novo by an appellate court.[14]
 
 
 20
 Did Xerox Allege an Injury? And What if it Didn't
 
 
 21
 In its Memorandum Order, the trial judge held:
 
 
 22
 After carefully reviewing the plaintiff's complaint, the court has found no allegation that the loans are now uncollectible, or that they will not be paid when they become due. Under the law of the Fifth Circuit, an injury is a prerequisite to a justiciable case. See, e.g., Lewis v. Knutson, 699 F.2d 230, 236 (5th Cir.1983). Thus, because the plaintiff has failed to allege any injury, dismissal is warranted.[15]
 
 
 23
 This ruling was treated by the parties, and apparently the trial judge, as a dismissal for "failure to state a claim upon which relief can be granted" under F.R.Civ.P. 12(b)(6). This failed to properly distinguish between Rules 12(b)(1) and 12(b)(6).
 
 
 24
 A failure to allege injury on the face of a complaint deprives the plaintiff of standing which is needed to satisfy Article III's case or controversy requirement.[16] This is a jurisdictional question which must be resolved as a preliminary matter. Under the Federal Rules of Civil Procedure, standing challenges are dealt with by motion under F.R.Civ.P. 12(b)(1) or on the court's own motion.[17] In making such a determination,
 
 
 25
 both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.... At the same time, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing. If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed.[18]
 
 
 26
 Because in this case the challenged basis of jurisdiction, failure to allege injury, is also an element of the cause of action, the proper course is to limit the jurisdictional inquiry to facial scrutiny and reserve factual scrutiny for the merits. If the facial attack shows there is no jurisdiction, the case should be dismissed under F.R.Civ.P. 12(b)(1). If the case survives facial attack, the lack of a cause of action should be dealt with under Rule 12(b)(6).[19]
 
 
 27
 Construing the complaint in favor of Xerox, and derivatively Genmoora, we find that an injury to the corporation was sufficiently alleged to give Xerox standing and to state a claim upon which relief could be granted. In its complaint, Xerox alleged that "the liquidating trust fund had never been funded;" "Genmoora assets had been significantly depleted;" "[a]t all relevant times, Collins, Brinker, Barton and Grayson were" directors; these directors "breached their fiduciary duties to Genmoora and participated in the dissolution of corporate assets by, among other things, permitting corporate funds to be lent to ICCI and Leopard's Head for little or no security and against the best interests of the corporation."[20] These are clearly allegations of injury to Genmoora and its shareholders at the hands of the ex-directors. They are also clearly allegations of breach of fiduciary duty by the ex-directors.[21]
 
 
 28
 Xerox was not required to allege that the loans would never be repaid in order to allege injury. The injury to a corporation occurs when it is induced by a fiduciary to enter a fraudulent loan or one that is insufficiently secured.[22]
 
 
 29
 The position of the ex-directors and that of the district court hearkens back to pre-1938 days when pleadings were microscopically scrutinized for precise words. Since Conley v. Gibson[23] the test is elastic: "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[24]
 
 
 30
 Barton and Collins argue that no injury to Genmoora, resulting from these loans, could be shown until (i) the loans are past due, (ii) Xerox has taken action against the debtors for principal, interest and attorneys fees, and (iii) Xerox has been unsuccessful in collecting its debt. Conley v. Gibson neither permits nor compels any such requirement. It would delay shareholder suits challenging such transactions for years, thereby thwarting any chances of rescinding or otherwise reforming them for the protection of the corporation and its shareholders. In effect, it would mean that no relief would be available until it was conclusively, and harmfully, proved that relief would have been appropriate at the time the transaction was entered into. Additionally, as discussed above, such a rule is in conflict with the procedural status and structure of a F.R.Civ.P. 12(b)(1) dismissal. We are dealing here with a facial attack for failure to allege injury. This should not be confused with the showing of injury Xerox would have to make at trial[25] or in response to some other form of attack on the merits.
 
 
 31
 We also emphasize that since the trial court had concerns about justiciability, it, at a minimum, should have exercised its power "to allow or to require" Xerox to supply more supportive facts either by amending the complaint or submitting affidavits. It is only after such an opportunity that a complaint should be dismissed for failure to demonstrate standing.[26] Xerox had, in fact, requested that the Motions to Dismiss be denied at this time or a continuance granted under F.R.Civ.P. 56(f) to allow it time to conduct discovery.[27]
 
 
 32
 We thus hold that it was error for the trial court to dismiss Xerox's complaint for failure to allege injury. Since materials outside the pleadings were submitted by the ex-directors with their motions to dismiss and not excluded by the trial court, the motions to dismiss for failure to show a fiduciary breach had to be treated as motions for summary judgment.[28]
 
 IV. Summary Judgment--Too Summary[29]
 
 33
 Rule 56(c) provides that "the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Courts must view all of the evidence and all factual inferences from the evidence in the light most favorable to the non-movant.[30] We have said that summary judgment must be denied when "reasonable minds might differ on the inferences arising from undisputed facts."[31]
 
 
 34
 As the party resisting a summary judgment motion, Xerox had no burden to come forward with affidavits or evidence of its own until the ex-directors met their burden of demonstrating that the facts underlying all the decisive legal issues involved were not in dispute.[32] But our task would have been considerably more simple had Xerox been "well advised to raise a shield."[33]
 
 
 35
 At the time the district judge dismissed Xerox's complaint as to the ex-directors, the record was very sparse. The trial judge was required to look to the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any."[34] These consisted of Xerox's Original Complaint, the Answers and motions of the ex-directors,[35] and affidavits of each of the ex-directors.[36]
 
 
 36
 Xerox did not submit any affidavits or file any discovery material to demonstrate the existence of a genuine issue of material fact as to the culpability of these ex-directors. This does not end the inquiry, however, for we now must determine whether, as urged by Xerox, the trial judge correctly applied the law to the revealed facts including whether a continuance should have been granted at Xerox's request, and whether its Motion for Reconsideration should have been granted.[37]
 
 
 37
 The trial court credited as undisputed that none of the ex-directors was an officer or director of Genmoora when the loan to ICCI was made and none of the directors participated in or approved the making of the loan before resigning.
 
 
 38
 The trial court's legal analysis was brief. It declared that although directors owe a fiduciary duty to their corporation,[38] that duty terminates when the director ends his relationship with the corporation.[39] Because the affidavit evidence showed that the ex-directors were not directors when the loans were made and did not participate in making them prior to their resignations, the trial court held that they could not have breached their fiduciary duties.[40] In the absence of responsive affidavits from Xerox, the trial court appropriately applied the general rule advanced by the ex-directors. On the face of the record--including the pleadings, motions, and affidavits--as it stood at that time, summary judgment was warranted.
 
 
 39
 We reverse, however, because the trial court abused its discretion in failing to grant a continuance before the summary judgment order was granted and in failing to grant Xerox's motion for reconsideration on the basis of the supporting evidence then presented.
 
 V. The Order of Things: Discovery First
 
 40
 In its response to the ex-directors' motions to dismiss,[41] Xerox urged the trial court to deny the requests for dismissal and summary judgment or to grant a continuance to allow it to conduct sufficient discovery to enable it to submit responsive affidavits. F.R.Civ.P. 56(f).[42] Xerox, on September 2, 1987, filed and served Interrogatories and Requests for Production of Documents with its Original Complaint.[43] As of the time Xerox was required to respond to the Motions to Dismiss and for Summary Judgment, on December 15, 1987, only Brinker and Grayson had responded[44] at all. Because of the conflicting schedules of counsel for Xerox and that for Brinker and Grayson, Xerox had been unable to review the documents produced by the time its response was due.[45] Collins and Barton responded[46] to the discovery requests on December 15, 1987, the day Xerox's response was due. Obviously Xerox did not have time to review and analyze those materials.[47]
 
 
 41
 The Fifth Circuit's standards for Rule 56(f) continuances were spelled out for us by Judge Reavley in Securities and Exchange Commission v. Spence & Green Chemical Company.[48] The party seeking more time should present "affidavits that contain specific facts explaining the failure to respond by counter affidavits demonstrating the existence of a genuine issue of fact."[49] Of course, "vague and conclusional claims"[50] are not sufficient. The continuance motion should show " 'how postponement of a ruling on the motion will enable [the party], by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact' "[51] since it "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts."[52]
 
 
 42
 Xerox clearly met this burden. It was not seeking additional discovery, but discovery at all. "Summary judgment should not ... ordinarily be granted before discovery has been completed."[53] This is especially true in this derivative suit where Xerox's proof must come largely, if not entirely, from the ex-directors.[54] A jury could believe all of them were acting under the spell of Verdesca, the masterminded genius who set up this scheme in which the lender, Genmoora, was secured by stock in itself. A rush to summary judgment was also particularly inappropriate here because the facts would naturally turn on the credibility of the ex-directors.[55] Without discovery, Xerox was substantially handicapped in any attack on the facts asserted by the ex-directors. Their credibility was very much at issue, not the least because of the slight, yet significant, differences in the affidavits submitted by the ex-directors.[56]
 
 
 43
 Xerox did not make vague assertions about the discovery it sought. It was specific in outlining the areas of discovery it needed to allow it to respond to the ex-directors' affidavits.[57] Xerox went further to state how this discovery would allow it to rebut the ex-directors' showing.[58] In short, Xerox expected to be able to show, after discovery, that the ex-directors were willing and knowledgeable participants in a plan by which they and Verdesca could cash out their Genmoora stock and reap all of the $3 million of Genmoora funds rightfully intended for distribution by the liquidating trust. Such a showing could have led the trier-of-fact to a finding of a breach of fiduciary duty despite the facts asserted by the ex-directors.[59] Xerox, in effect, strenuously urged that discovery would yield evidence that would bring this situation within an exception to the general corporate rules asserted by the ex-directors and adopted by the trial court on summary judgment. Xerox should have been allowed the chance to make such a showing.
 
 
 44
 The cases the ex-directors cite to the contrary are inapposite. It is simply not the case that if a corporate director resigns before a loan document is signed, he will be absolved of all liability in connection with that loan.[60] A director can breach his duty of care--hence his fiduciary duty--by knowing a transaction that will be dangerous to the corporation is about to occur but taking no steps to prevent it or make his objection known.[61]
 
 Reconsideration Was In Order
 
 45
 Allowing Xerox time for discovery before granting summary judgment would most likely have alleviated the need for a Motion for Reconsideration. However, because that result is not certain, we hold that under the particular circumstances of this case the trial court abused its discretion in not reconsidering its grant of summary judgment.[62]
 
 
 46
 The trial court, in its one sentence denial of reconsideration, did not assert any basis--in fact or law--for its decision. It is clear that this was not, as the ex-directors argue, a motion under F.R.Civ.P. 60(b). Rule 60(b) is a vehicle for seeking relief from final orders or judgments. The summary judgment was an interlocutory order at the time Xerox moved for reconsideration. We find that Xerox properly asked the district court to exercise its power to modify or rescind its interlocutory order.[63]
 
 
 47
 With its motion for reconsideration, Xerox presented many documentary exhibits from the record compiled in the related Moore Business Forms Litigation.[64] These exhibits included excerpts from the ex-directors' depositions taken in the earlier cases and the documents they identified during those depositions. Also included were excerpts from Verdesca's deposition and documents identified in it.
 
 
 48
 This evidence reflects the existence of several issues of material fact. For example, it shows that the ex-directors received the proceeds of the loan from Genmoora to ICCI. Those are the very funds ICCI used to pay the ex-directors for their shares of Genmoora stock. Their stock, in turn, was the only security for the loans. This raises a fact issue as to the ex-directors' knowledge of the loans and participation in the transaction. Further the evidence shows that this transaction was characterized by Verdesca as a leveraged buyout to gain control of Genmoora--the ex-directors sold Verdesca their shares providing Verdesca with a controlling percentage of the total shares. The evidence also showed that the ex-directors were familiar with Verdesca and his reputation before this transaction was constructed, i.e., while they were directors and thus bound by fiduciary duties. This raises factual issues as to their breach of those duties.
 
 
 49
 Because these documents reflect the existence of genuine issues of material fact, the trial judge knew positively at that time that his earlier grant of summary judgment could no longer be justified. He could not turn his back on such an overwhelming showing. He was obliged to reconsider and rescind the interlocutory summary judgment order. Failure to do so constituted an abuse of discretion.[65]
 
 
 50
 The ex-directors support the denial of reconsideration and raise several counter-arguments. First, they contend that the so-called evidence Xerox submitted with its Motion for Reconsideration was incompetent and could not provide the basis of a denial of summary judgment. Brinker and Grayson argue that it is "axiomatic" that documents submitted with a motion for reconsideration of a summary judgment must meet the requirements of F.R.Civ.P. 56(e).[66] Finding this argument far too simplistic, we disagree. Xerox was complaining of the failure of the trial court to grant its Rule 56(f) request for a continuance. Any reasonably reliable showing bearing on the likelihood of the existence of legally provable evidence should be considered by a trial court in determining whether further discovery is reasonably necessary. Discovery is the method by which authentication is gained. Furthermore, the documents submitted were for Rule 56 purposes adequately authenticated. They were accompanied by an affidavit which identified each document. Many of the documents were excerpts from the ex-directors' own depositions which were certified as correct by the court reporter. Most of the others were exhibits to those depositions which the ex-directors themselves had authenticated.
 
 
 51
 Second, ex-directors contest the competency of their own prior deposition testimony from the Moore Business Forms Litigation. They base this argument in part on their misconception that evidence supporting a motion for reconsideration must in each and every respect meet the requirements for use of such documents in an initial Rule 56(e) proceeding. Whatever the particular deficiencies in these verified documents, we find it incredible that the ex-directors could now assert that they were not "competent to testify to the matters stated therein" or that the testimony they gave was not based on "personal knowledge."[67]
 
 
 52
 Finally, the ex-directors assert that even if this evidence is competent, it does not create a genuine issue of material fact with regard to claims Xerox made in its complaint. This is to assert that properly understood and evaluated the evidence does not overcome the positive ex-director affidavits to the contrary. But the judge on summary judgment cannot make such factual determinations. Xerox alleged that the ex-directors were directors and fiduciaries who had "breached their fiduciary duties to Genmoora and participated in the dissolution of corporate assets by, among other things, permitting corporate funds to be lent to ICCI and Leopard's Head for little or no security and against the best interests of the corporation."[68] In light of these allegations, it was too early for the court to rule that to be liable directors had to formally approve a loan in recorded minutes of Board meetings.[69] If the ex-directors were--as these documents strongly suggest--aware of the entire transaction of which their resignations and stock sales were a part, a jury might readily conclude that ex-directors "permitted" the undersecured loans and the consequent failure to fund the Liquidating Trust. A failure to object to what they knew would harm Genmoora might likewise be treated by the jury as "permission" and a fiduciary breach.
 
 Conclusion
 
 53
 We reverse the trial court's dismissal for failure to allege injury. We find Xerox's Original Complaint adequate. It alleges injury with enough particularity to withstand challenges based on standing, F.R.Civ.P. 12(b)(1), and for failure to state a claim upon which relief could be granted. F.R.Civ.P. 12(b)(6). We also reverse the trial court's denial of reconsideration of its grant of summary judgment and encompassed within it the grant of a continuance for adequate discovery. Xerox clearly showed that had it been allowed adequate discovery prior to the grant of summary judgment, it could have shown genuine issues of material fact sufficient to preclude summary judgment.
 
 
 54
 Xerox is entitled to its day in court. What that day will produce we neither predict nor ordain. We cannot emphasize too strongly that in the posture of a case going off on pleadings and summary judgment our expressions concerning potential jury findings and legal liability thereon are not, and are not intended to be, any declaration or even intimation of this court's view on possible jury findings, the legal effect thereof or the ultimate liability of any one or all of the defendant appellees. The trial court's entry of final judgment is hereby vacated.[70] This case is reversed and remanded for further consistent proceedings.
 
 
 55
 REVERSED AND REMANDED.
 
 
 
 [1]
 The sale of assets has given rise to two lawsuits referred to herein as the Moore Business Forms Litigation. The two cases, filed in the Northern District of Texas, Dallas Division (Maloney, J.) are: The Genmoora Corporation v. Moore Business Forms, Inc., CA3-85-0144-T ("Moore I") and Moore Business Forms, Inc. v. Thomas U. Barton, et al., CA3-87-0059-T ("Moore II")
 
 
 [2]
 Verdesca is also a defendant in the main action brought by Xerox, however, the claims against him were not dismissed or defeated on summary judgment like the claims against the ex-directors. Xerox's case against Verdesca remained viable
 
 
 [3]
 Letter from Collins to Brinker and Grayson dated November 27, 1984. This was not an isolated expression of concern. In a November 30, 1984 letter Collins told Brinker and Grayson that he "spent 3 to 4 hours with a group of lawyers discussing what the shareholders' alternatives are to recover from the crook that bankrupted Genra." Collins further referred to his raising "unholy hell" on prior occasions to prevent Verdesca's "megliomaniactical money spending, book manipulating monetary policy." Significantly, Collins vowed to "block anything legally where this unprincipled thief walks out without everyone making some profit or at least getting their money back." His preference was to "get all [Verdesca's] ill gotten gains back and split it among all the shareholders and in the process prove that he deserves a private room at state expense to rethink his personal and business ethics. The man is a menace to the public." Collins wrote Brinker and Grayson again on December 4, 1989 after reviewing closing documentation on the transaction with Moore that "obviously no one has read and Joe never intended for us to read it. In fact, this fraud is clearly extended to Bob Dyer, who acting as corporate counsel, has been grossly irresponsible at worst and a collaborator and fraud most likely."
 
 
 [4]
 See note 6, infra
 
 
 [5]
 Under this scheme, if Genmoora were forced to rely on the security agreement, it would foreclose on its own stock and ultimately own itself. This incredible scenario is further complicated by the fact that after September 24, 1985, Verdesca was the controlling shareholder of both companies
 
 
 [6]
 This purchase was funded by borrowing the purchase price from City National Bank of Plano with the stock pledged as collateral. The loan from Genmoora to ICCI funded the same day, contemporaneously with the bank loan. The funds from the Genmoora loan were then immediately used to pay the outstanding balance of the Plano bank loan
 
 
 [7]
 See, e.g., Incas and Monterey Printing and Packaging, Ltd. v. M/V SANG JIN, 747 F.2d 958, 963 n. 15 (5th Cir.1984), cert. denied, 471 U.S. 1117, 105 S.Ct. 2361, 86 L.Ed.2d 261 (1985) ("The requirement of F.R.A.P. 3(c) that a notice of appeal designate the judgment from which it is taken is not to be so strictly construed as to defeat an appeal where appellant's overriding intent to appeal is clear."), citing Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)
 
 
 [8]
 F.R.A.P. 28(j). Citation of Supplemental Authorities
 When pertinent and significant authorities come to the attention of a party after the party's brief has been filed or after oral argument but before decision, a party may promptly advise the clerk of the court, by letter, with a copy to all counsel, setting forth the citations. There shall be a reference either to the page of the brief or to a point argued orally to which the citations pertain, but the letter shall without argument state the reasons for the supplemental citations. Any response shall be made promptly and shall be similarly limited.
 
 
 [9]
 See supra note 1
 
 
 [10]
 Insofar as it has any relevant significance we may take judicial notice of the fact of judgment in a related case pursuant to Fifth Circuit Rule No. 46.2 which requires "counsel to cite all pending related cases ... which involve a similar issue or issues. Counsel shall update such information at the time of briefing." We acknowledge the judgment although the "update" was proffered long after briefing
 
 
 [11]
 Brinker and Grayson filed separate motions to dismiss which relied on their affidavits to show that there was no fiduciary breach. Barton and Collins filed a joint motion to dismiss or alternatively for summary judgment. They also argued that there was a failure to show a fiduciary breach based on their unchallenged affidavits. Additionally, they argued that Xerox failed to allege in its complaint that it had sustained any injury. Xerox responded to these motions as if they all sought summary judgment since they all relied on affidavits. See F.R.Civ.P. 12(b). We agree that the requests for dismissal for failure to show a fiduciary breach had to be dealt with as summary judgment motions. However, the facial attack for failure to allege injury was not supported by affidavits and therefore had to be dealt with under F.R.Civ.P. 12(b)(1) and (6)
 
 
 [12]
 The trial court ruled that under the law of the Fifth Circuit, an injury is a prerequisite to a justiciable case, citing, Lewis v. Knutson, 699 F.2d 230, 236 (5th Cir.1983). In the trial court's judgment, this prerequisite was not met because Xerox failed to allege that the loans were currently uncollectible or would not be paid when they came due. As we discuss in more detail, infra, Lewis v. Knutson, a case involving a shareholders' derivative suit, develops the distinction between F.R.Civ.P. 12(b)(1) and F.R.Civ.P. 12(b)(6)
 
 
 [13]
 The trial court looked at the ex-directors' affidavits which showed they were not directors at the time the loans were made and did not participate in the making of loans prior to their resignations. Thus the trial court found no factual issue relating to the alleged breach of fiduciary duty which terminated with their directorships. It cited Briggs v. Spaulding, 141 U.S. 132, 152-54, 11 S.Ct. 924, 931-32, 35 L.Ed. 662 (1891) and 3A Fletcher Cyclopedia of the Law of Private Corporations, 1082 (1986 rev. ed.)
 
 
 [14]
 With regard to F.R.Civ.P. 12(b)(1), see Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206-07, 45 L.Ed.2d 343, 356 (1975). With regard to F.R.Civ.P. 12(b)(6), see Wells v. Walker, 852 F.2d 368, 369-70 (8th Cir.1980), cert. denied, --- U.S. ----, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989); Dugan v. Brooks, 818 F.2d 513, 516 (6th Cir.1987); Leidholdt v. L.F.P., Inc., 860 F.2d 890, 893 (9th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1532, 103 L.Ed.2d 837 (1989). With regard to Rule 56(c), see New York Life Insurance Co. v. Baum, 707 F.2d 870, 871 (5th Cir.1983); Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc., 669 F.2d 1026, 1030 (5th Cir. Unit B 1982)
 
 
 [15]
 R. 82
 
 
 [16]
 See, e.g., Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595, 610 (1978); Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 260-61, 97 S.Ct. 555, 560-61, 50 L.Ed.2d 450, 461-62 (1977); Simon v. EKWRO, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450, 460 (1976); Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343, 354-55 (1975)
 
 
 [17]
 See, e.g., Bender v. Williamsport Area School Dist., 475 U.S. 534, 541-42, 106 S.Ct. 1326, 1331-32, 89 L.Ed.2d 501, 511 (1986); Save the Bay, Inc. v U.S. Army, 639 F.2d 1100, 1102 (5th Cir.1981)
 
 
 [18]
 Lewis v. Knutson, 699 F.2d at 237, quoting Warth v. Seldin, 422 U.S. 490, 501-02, 95 S.Ct. 2197, 2206-07, 45 L.Ed.2d 343, 356 (1975)
 
 
 [19]
 See Lewis v. Knutson, 699 F.2d at 237
 
 
 [20]
 R. 6-7, at 24, 27 and 31
 
 
 [21]
 See infra, text accompanying notes 64-69 for discussion of legal claims
 
 
 [22]
 See Annot., 162 A.L.R. 698 (1946) and Annot., 72 A.L.R.2d 943, 945 (1960)
 
 
 [23]
 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80, 84 (1957)
 
 
 [24]
 The documents Xerox submitted in support of its Motion for Reconsideration convince us that Xerox could show a set of facts in support of its claim which would entitle it to relief. Xerox's showing at that time demonstrates that it was not "beyond doubt" that Xerox could prove no set of facts in support of its claim. Thus, the material is clearly usable for Conley v. Gibson purposes whatever its deficiencies might be for purposes of Rule 56(c)
 
 
 [25]
 See supra, text accompanying note 18
 
 
 [26]
 Id
 
 
 [27]
 In its response motion, Xerox had recognized that the ex-directors' motions to dismiss should be treated as motions for summary judgment since they relied on affidavits. F.R.Civ.P. 12(b) provides that when matters outside the pleadings are to be considered in connection with a Rule 12(b)(6) motion, it is to be treated as a motion for summary judgment in compliance with F.R.Civ.P. 56
 
 
 [28]
 See F.R.Civ.P. 12(b); see also Ware v. Associated Milk Producers, Inc., 614 F.2d 413, 414 (5th Cir.1980)
 
 
 [29]
 Because we found the dismissal for failure to allege injury to be in error, we review the trial court's grant of summary judgment. We point out, however, that had there been no allegation of injury, and thus no standing, neither the trial court, nor this court, would have had jurisdiction to address this issue. This is significant in a shareholder derivative suit where a dismissal on the merits acts as res judicata barring similar suits by other shareholders. If the case is dismissed for want of jurisdiction, however, there is no res judicata effect except on the question of jurisdiction
 
 
 [30]
 Impossible Electronics, 669 F.2d at 1031 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970) and Environmental Defense Fund v. Marsh, 651 F.2d 983, 990-91 (5th Cir.1981))
 
 
 [31]
 Impossible Electronics, 669 F.2d at 1031
 
 
 [32]
 Impossible Electronics, 669 F.2d at 1031 (citing Adickes v. S.H. Kress & Co., 398 U.S. at 160, 90 S.Ct. at 1609-10, 26 L.Ed.2d at 155; Environmental Defense Fund v. Marsh, 651 F.2d at 991; Brunswick Corp. v. Vineberg, 370 F.2d 605, 611-12 (5th Cir.1967), etc.)
 
 
 [33]
 Nicholas Acoustics & Specialty Co. v. H & M Construction Co., Inc., 695 F.2d 839, 844 (5th Cir.1983); see F.R.Civ.P. 56(e):
 When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits, or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.
 
 
 [34]
 F.R.Civ.P. 56(c)
 
 
 [35]
 Defendants Grayson and Brinker filed their answers accompanied by motions to dismiss and briefs in support thereof on November 2, 1987. The docket sheet shows that defendants Barton and Collins never filed an answer, however they did file, jointly, a motion to dismiss and a brief in support thereof on December 7, 1987
 
 
 [36]
 The four affidavits in substance were somewhat different. All of them stated that they resigned as directors of Genmoora on September 24, 1985. Brinker and Grayson stated that neither of them "participate[d] in or approve[d] the lending of Genmoora corporate funds to ..." Verdesca, ICCI, or Leopard's Head Ltd. Collins and Barton were slightly more circumspect. They averred: "Prior to my resignation, I did not approve or participate in the approval of any loans made by Genmoora to ..." ICCI, Leopard's Head Ltd., Verdesca, or any entity controlled by Verdesca (emphasis added)
 
 
 [37]
 Even when all the facts are undisputed, summary judgment may nonetheless be inappropriate
 There is no litmus that infallibly distinguishes those issues that are "factual" from those that are "legal" or "mixed." When all those material facts susceptible of objective determination are known, there may be inferences or conclusions to be drawn from them.... [A]s we approach the point where facts and the application of legal rule to them blend, appraising evidentiary facts in terms of their legal consequences and "applying" law to fact become inseparable processes.
 Nunez v. Superior Oil Co., 572 F.2d 1119, 1123 (5th Cir.1978).
 
 
 [38]
 The trial court cited Gearhart Industries, Inc. v. Smith International, Inc., 741 F.2d 707, 719-21 (5th Cir.1984); International Bankers Life Insurance Co. v. Holloway, 368 S.W.2d 567, 576 (Tex.1963)
 
 
 [39]
 The trial court cited Briggs v. Spaulding, 141 U.S. 132, 152-54, 11 S.Ct. 924, 931-32, 35 L.Ed. 662 (1891); 3A Fletcher's Cyclopedia of the Law of Private Corporations, 1082 (1986 rev. ed.)
 
 
 [40]
 See R. at 81-84
 
 
 [41]
 See supra note 11
 
 
 [42]
 F.R.Civ.P. 56(f):
 Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
 
 
 [43]
 Because Xerox sought discovery early in the case--in fact contemporaneously with its creation--our decision on the Rule 56(f) motion is not controlled by cases involving plaintiffs who had failed to seek any discovery for several months after filing suit or who were inexplicably dilatory. Thus we distinguish the following cases cited by the ex-directors: United States v. Bob Stofer Oldsmobile-Cadillac, Inc., 766 F.2d 1147, 1153 (7th Cir.1985) (counsel did not notice a deposition until after the discovery deadline set at a pretrial conference months earlier); Aviation Specialities, Inc. v. United Technologies Corp., 568 F.2d 1186, 1189-90 (5th Cir.1978) (plaintiff filed action in May and had not initiated any discovery by November)
 
 
 [44]
 The discovery Xerox received has not formally been made part of the record. Presumably this is because of Rule 2.2(a) of the Local Rules of the Northern District of Texas which provides that discovery materials are not to be filed except on special order of the presiding judge
 
 
 [45]
 All Xerox was able to review before responding were a few documents Brinker and Grayson provided copies of relating to the ex-directors' resignations and sales of stock to ICCI and the establishment of the Liquidating Trust. R. 74 (Brinker's Reply to Xerox's Opposition to the Motions to Dismiss)
 
 
 [46]
 See supra note 44
 
 
 [47]
 On these facts and the other extraordinary circumstances of this case, we conclude that it was an abuse of his discretion for the trial judge not to hold that Xerox lacked both adequate time for discovery and adequate discovery. See Union City Barge Line, Inc. v. Union Carbide Corp., 823 F.2d 129, 138 n. 21 (5th Cir.1987). Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265, 273 (1986) held:
 the plain language of rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.
 
 
 [48]
 612 F.2d 896 (5th Cir.1980), cert. denied, 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981)
 
 
 [49]
 SEC v. Spence & Green, 612 F.2d at 900
 
 
 [50]
 Id
 
 
 [51]
 Id. at 901, citing Willmar Poultry Co. v. Morton-Norwich Products, Inc., 520 F.2d 289, 197 (8th Cir.1975), cert. denied, 424 U.S. 915, 96 S.Ct. 1116, 47 L.Ed.2d 320 (1976)
 
 
 [52]
 Id., citing Gossett v. Du-Ra-Kel Corp., 569 F.2d 869, 873 (5th Cir.1978)
 
 
 [53]
 Alabama Farm Bureau Mutual Casualty Co., Inc. v. American Fidelity Life Insurance Co., 606 F.2d 602, 609 (5th Cir.1979), cert. denied, 449 U.S. 820, 101 S.Ct. 77, 66 L.Ed.2d 22 (1980)
 
 
 [54]
 Id., citing 6 Moore's Federal Practice 56.17 at 56-1065 (1976 ed.):
 In applying the basic principles the factor of access to proof must, however, be seriously considered in ruling on a defendant's motion for summary judgment, particularly in [a stockholder's derivative action] where plaintiff's proof must come mainly from sources largely within the control of the defendants and from the mouths of the alleged wrongdoers. (Bracketed material contained in original.)
 
 
 [55]
 Slavin v. Curry, 574 F.2d 1256, 1267 (5th Cir.1978), quoting Conrad v. Delta Air Lines, Inc., 494 F.2d 914, 918 (7th Cir.1974), overruled on other grounds, Sparks v. Duval County Ranch Co., Inc., 604 F.2d 976 (5th Cir.1979)
 
 
 [56]
 See supra, note 36
 
 
 [57]
 Xerox stated that it sought discovery from all parties on the following matters: "(a) the composition at various relevant dates of Genmoora's Board of Directors, (b) the discussions, planning, approval and ultimate documentation of the loans and transactions challenged by Xerox in this lawsuit, and (c) the sales by various of the Alleged Former Directors of their stock in Genmoora at or about the time of their resignation." Opposition of Plaintiff to Motions to Dismiss at 2
 
 
 [58]
 "Even if the affidavits are correct on their face that resignations were tendered on September 24, 1985, the Alleged Former Directors fail to recognize that their mere resignation as directors does not relieve them of duties which should have been exercised prior to the resignation or which may have been breached in a series of transactions of which the resignation was only a part." Opposition of Plaintiff to Motions to Dismiss at 3
 
 
 [59]
 See, e.g., DePinto v. Provident Security Life Ins. Co., 374 F.2d 37 (9th Cir.1967), cert. denied, 389 U.S. 822, 88 S.Ct. 48, 52, 19 L.Ed.2d 74 (1967); Flanagon & Keating, 3A Fletcher Cyclopedia of the Law of Private Corporations, 1082 (1986 rev. ed.) ("directors ... liable for the losses caused by their neglect of duty although such losses resulted after they had ceased to be directors....")
 
 
 [60]
 Xerox has colorfully described this theory advanced by the ex-directors as the "Geronimo theory." Under this theory, by analogy, if a commercial airline pilot were to negligently aim his airplane full of passengers at a mountain, and then bail out before impact, he would not be liable because he was not at the controls when the crash occurred. Certainly the position argued by the ex-directors would allow many corporate fiduciaries who are guilty of wrongdoing to avoid liability merely by appropriately timing their resignations
 
 
 [61]
 See Gerdes v. Reynolds, 28 N.Y.S.2d 622, 651 (N.Y.Sup.Ct.1941) ("[D]irectors always and necessarily stand in fiduciary relation to the corporation and to its stockholders and creditors.... Officers and directors thus cannot terminate their agency or accept the resignation of others if the immediate consequence would be to leave the interests of the company without proper care and protection.")
 
 
 [62]
 The grant or denial of reconsideration is reviewed only for abuse of discretion. Zimzores v. Veterans Administration, 778 F.2d 264, 266-67 (5th Cir.1985)
 
 
 [63]
 Bon Air Hotel, Inc. v. Time, Inc., 426 F.2d 858, 862 (5th Cir.1970); see also, Zimzores v. Veterans Administration, 778 F.2d at 266
 
 
 [64]
 See supra note 1
 
 
 [65]
 See supra note 62. The trial court denied the Motion for Reconsideration and for leave to amend in a one sentence order. The lack of explanation for this order makes it more difficult for us to review the trial court's exercise of discretion. Its failure to reverse and rescind, in view of the clear factual issues presented, and in the absence of any alternative explanation for its decision, is equally unconvincing
 
 
 [66]
 Brinker and Grayson rely on Bon Air Hotel v. Time, Inc., 426 F.2d at 863, n. 11, for this proposition. If these ex-directors had read the remainder of the footnote which they ill-advisedly cite in part and the accompanying text, they would have realized that case does not support their argument. Instead the court stated that since it was reconsidering Time's summary judgment motion, Bon Air should have used affidavits or evidence contemplated by Rule 56(e), "and if time had not permitted it to do so, should have requested the district court to reconsider its order granting summary judgment." By its words the court was expressly contemplating what Xerox had to do in this case
 
 
 [67]
 See F.R.Civ.P. 56(e)
 
 
 [68]
 R. at 7
 
 
 [69]
 Ex-directors have argued that since they did not "approve" the loans while directors, they did not "permit" them as Xerox alleged
 
 
 [70]
 Because we find a claim has been sufficiently stated to withstand 12(b)(6), we need not reach the question of the trial court's denial of leave to amend Xerox's complaint. For purposes of our remand, we only point out to the trial court that leave to amend should be freely granted and denied only upon a showing of prejudice to the other party. F.R.Civ.P. 15(a)