GRUENDER, Circuit Judge,
concurring in part and dissenting in part.
Trinity Lutheran Church (“Trinity Lutheran”) applied for a grant through the Learning Center, a daycare and preschool that Trinity Lutheran runs. This grant would allow the Learning Center to make its playground safer by swapping the gravel that covers it for a rubber surface made from recycled tires. The Missouri Department of Natural Resources (“the Department”), which administers this grant program, accepted Trinity Lutheran’s application and ranked it fifth out of the forty-four applications from that year. The Department approved fourteen grant applications, but Trinity Lutheran’s was not among them. Relying solely on the Missouri Constitution’s prohibition on using public funds to aid a church, Mo. Const, art. I, § 7, the Department denied Trinity Lutheran’s grant application. Thus, but for the fact that the Learning Center was run by a church, it would have received a playground-surfacing grant. Where, as here, generally available funds are withheld solely on the basis of religion, the Supreme Court’s decision in Locke v. Davey, 540 U.S. 712, 124 S.Ct. 1307, 158 L.Ed.2d 1 (2004), governs claims brought under the Free Exercise Clause of the First Amendment. Applying the careful balance struck by Locke, I would conclude that Trinity Lutheran has sufficiently pled a violation of the Free Exercise Clause as well as a derivative claim under The Equal Protection Clause.
The court attempts to impose a barrier to full consideration of Locke. Trinity Lutheran, the court concludes, challenges the facial validity of Article I, § 7 of the Missouri Constitution by requesting a ruling that “a state constitution violates the First Amendment and the Equal Protection Clause if it bars the grant of public funds to a church.” Ante at 5. By framing Trinity Lutheran’s claim this broadly, the court avoids fully grappling with Locke by merely pointing to an instance in which this state constitutional provision has been upheld. See United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (requiring a plaintiff raising a facial attack to show “no set of circumstances” under which a provision would be valid). The court concludes that the Supreme Court’s summary affirmance in Luetkemeyer v. Kaufmann, 364 F.Supp. 376 (W.D.Mo.1973), aff'd, 419 U.S. 888, 95 S.Ct. 167, 42 L.Ed.2d 134 (1974), a case that concerned the separate issue of busing, id. at 377, is one such application.[5]
But Trinity Lutheran does not mount the expansive facial challenge that the *791 court attributes to it. Trinity Lutheran tries to bring an as-applied challenge; the complaint says so numerous times. However, determining whether a constitutional challenge is purely as-applied, purely facial, or somewhere in between turns on whether the plaintiffs “claim and the relief that would follow ... reach beyond the particular circumstances of the[] plaintiff[ ].” Doe v. Reed, 561 U.S. 186, 194, 130 S.Ct. 2811, 177 L.Ed.2d 493 (2010). If they do, the claim is facial but only “to the extent of that reach.” Id. When analyzing a claim and the relief that would follow, a court should “construe a plaintiffs challenge, if possible, to be as-applied.” Am. Fed’n of State, Cnty. & Mun. Emps. Council 79 v. Scott, 717 F.3d 851, 864 (11th Cir.2013), cert. denied, 572 U.S. -, 134 S.Ct. 1877, 188 L.Ed.2d 912 (2014). Trinity Lutheran, as the court acknowledges, frames its challenge as an attack on the Department’s “customs, policies, and practices.” And Trinity Lutheran specifically requests a declaration that the Department’s denial of its grant application was unconstitutional. Trinity Lutheran also specifically requests injunctive relief prohibiting the Department from discriminating against it in future grant applications. Id. at 862 (“We look to the scope of the relief requested to determine whether a challenge is facial or as-applied in nature.”). This claim and relief only implicate Trinity Lutheran. See Doe, 561 U.S. at 194, 130 S.Ct. 2811. Consequently, Trinity Lutheran does not contend that Article I, § 7 of the Missouri Constitution is unconstitutional in all of its applications.
This brings me to Locke. In the face of a Free Exercise challenge, the Court upheld a college scholarship program that prevented students from using the scholarship to pursue a degree in devotional theology, a course of study that the court characterized as “akin to a religious calling as well as an academic pursuit.” 540 U.S. at 715, 721, 725, 124 S.Ct. 1307. The Court began with the proposition that “there are some state actions permitted by the Establishment Clause but not required by the Free Exercise Clause.” Id. at 719, 124 S.Ct. 1307. Because the “State’s disfavor of religion (if it can be called that)” in prohibiting recipients from using the scholarship to major in devotional theology “is of a far milder kind,” the Court concluded that the scholarship program was not presumptively unconstitutional. Id.- at 720, 124 S.Ct. 1307. In upholding the program, the Court found that it “goes a long way toward including religion in its benefits”— for example, by allowing recipients to attend pervasively religious schools that are accredited and to take devotional-theology courses. Id. at 724-25, 124 S.Ct. 1307. To the Court, this “relatively minor burden” was justified by a “historic and substantial state interest” of not funding “an essentially religious endeavor.” Id. at 721, 725, 124 S.Ct. 1307. This interest, the Court explained, was rooted in our nation’s history of “popular uprisings against procuring taxpayer funds to support church leaders” as well as the founding-era decisions of many states to ’“place[] in their constitutions formal prohibitions against using tax funds to support the ministry.” Id. at 721-23, 124 S.Ct. 1307. Considering this “historic and substantial state interest” alongside the “relatively minor burden,” the Court found no violation of the Free Exercise Clause. Id. at 725, 124 S.Ct. 1307.
Locke did not leave states with unfettered discretion to exclude the religious from generally available public benefits. To the contrary, Chief Justice Rehnquist’s' opinion for seven .members of the Court was careful to acknowledge its parameters. See id. at 719, 725, 124 S.Ct. 1307 (stating that “some” actions are permitted by the Establishment Clause but not required by the Free Exercise Clause and explaining that “[i]f any room exists between the two *792 Religion Clauses, it must be here”). “The [Locke] opinion thus suggests, even if it does not hold, that the State’s latitude to discriminate against religion is confined to certain ‘historic and substantial state interest[s],’ and does not extend to the wholesale exclusion of religious institutions and their students from otherwise neutral and generally available government support.” Colo. Christian Univ. v. Weaver, 534 F.3d 1245, 1255 (10th Cir.2008) (McConnell, J.) (alteration in original) (citation omitted) (quoting Locke, 540 U.S. at 725, 124 S.Ct. 1307). Locke “suggests the need for balancing interests: its holding that ‘minor burden[s]’ and ‘milder’ forms of ‘disfavor’ are tolerable in service of ‘historic and substantial state interest[s]’ implies that major burdens and categorical exclusions from public benefits might not be permitted in service of lesser or less long-established governmental ends.” Id. at 1255-56 (alterations in original) (quoting Locke, 540 U.S. at 720, 725, 124 S.Ct. 1307). Simply put, the Locke Court “indicated that the State’s latitude with respect to funding decisions has limits.” Id. at 1255.
Applying the balancing of interests contemplated by Locke, I conclude that Trinity Lutheran has sufficiently pled a Free Exercise violation. The disfavor of religion here is more pronounced than in Locke. The student in Locke could use his scholarship to attend a pervasively religious school that was accredited and to take courses in devotional theology there. And a pervasively religious school that received scholarship money even could require its students to take devotional-theology classes. 540 U.S. at 724-25, 124 S.Ct. 1307. The program, as the Court put it, went “a long way toward including religion in its benefits.” Id. at 724, 124 S.Ct. 1307. The same cannot be said here. Trinity Lutheran has pled that the Department categorically prohibited the Learning Center from receiving a playground-surfacing grant because it is run by a church. This blanket prohibition is different in kind from the disfavor of religion that was present in Locke. Whereas the Locke program excluded religious study while also including it, id. at 724-25, 124 S.Ct. 1307, the Department has entirely excluded the Learning Center from receiving a playground-surfacing grant. Much like the Tenth Circuit, I read Locke to impose some bounds on such a “wholesale exclusion of religious institutions and their students from otherwise neutral and generally available government support.” Colo. Christian, 534 F.3d at 1255.
The Department’s reason for singling out the Learning Center differs from the historic and substantial state interest in Locke, where the state sought to avoid paying for the training of clergy, “an essentially religious endeavor.” 540 U.S. at 721-23, 124 S.Ct. 1307. The sheer religiosity of this activity led the court to remark that “we can think of few areas in which a State’s antiestablishment interests come more into play.” Id. at 722, 124 S.Ct. 1307. It is true that the Department’s interest in enforcing Article I, § 7 of the Missouri Constitution is historic in the sense that this provision is longstanding. But the state’s interest in Locke traced to concerns that were specific to paying for training the clergy. Id. at 722-23, 124 S.Ct. 1307. The Court was unequivocal about this point: “[T]he only interest at issue here is the State’s interest in not funding the religious training of clergy.” Id. at 722 n. 5, 124 S.Ct. 1307. Here, by contrast, the Department seeks to enforce a general prohibition on aid to a church that is in no way specific to the playground-surfacing grant program. This case therefore lacks the correspondence between the past and the Department’s present interest that the Court found significant in Locke. Cf. id. (“Nothing in our opinion suggests that the State may justify any interest that its *793 ‘philosophical preference’ commands.”); McDaniel v. Paty, 435 U.S. 618, 628-29, 98 S.Ct. 1322, 55 L.Ed.2d 593 (1978) (plurality opinion) (explaining that “the American experience provides no persuasive support” for an antiestablishment concern even though several states had constitutional provisions on the topic); Bronx Household of Faith v. Bd. of Educ. of N.Y., 750 F.3d 184, 195 (2d Cir.2014) (“We do not mean to imply that merely by claiming the motivation of observing interests favored by the Establishment Clause a governmental entity gets a free pass, avoiding all scrutiny”), cert. denied, 575 U.S. -, 135 S.Ct. 1730, 191 L.Ed.2d 695 (2015).
Perhaps more importantly, the substantial antiestablishment interest identified in Locke is not present here. Unlike a student preparing for the ministry, which is “an essentially religious endeavor,” 540 U.S. at 721, 124 S.Ct. 1307, schoolchildren playing on a safer rubber surface made from environmentally-friendly recycled tires has nothing to do with religion. If giving the Learning Center a playground-surfacing grant raises a substantial anties-tablishment concern, the same can be said for virtually all government aid to the Learning Center, no matter how far removed from religion that aid may be. When the Locke Court spoke of a substantial antiestablishment concern, I seriously doubt it was contemplating a state’s interest in not rubberizing a playground surface with recycled tires. See Bronx Household of Faith, 750 F.3d at 194 (“Underlying the Board’s prohibition [of hosting religious services in school facilities] is a slightly different manifestation of the same historical and constitutional aversion to the use of public funds to support the practice of religion cited by the Court in Locke.”).
In light of the Department’s negligible antiestablishment interest, I conclude that the court overstates the significance of the Department’s concern about giving a grant directly to the Learning Center, rather than having the money filtered through the independent choice of private individuals. “Although private choice is one way to break the link between government and religion, it is not the only way.” Am. Atheists, Inc. v. City of Detroit Downtown Dev. Auth., 567 F.3d 278, 295 (6th Cir.2009). Indeed, even though the playground-surfacing program involves a direct transfer of funds to the Learning Center, the court concludes that “it now seems rather clear that Missouri could include the Learning Center’s playground in a non-discriminatory Scrap Tire program without violating the Establishment Clause.” Ante at 7. I agree. See Am. Atheists, 567 F.3d at 295 (collecting cases to demonstrate that the Supreme Court “has sustained a number of neutral aid programs that distributed aid directly to religious organizations — without filtering the aid through private choice — where the aid itself had no religious content and any actual diversion was de minimis”). And I, of course, agree with the court that, in many cases, a concern about giving money directly to a church-run school may amount to a historic and substantial state interest. Indeed, were it to be uncovered during discovery that the Learning Center regularly uses its playground for religious activities, my Free Exercise concern would be less acute. However, at this stage of the litigation, I cannot conclude that the Department’s concern about direct funding for a rubber playground surface translates into a historic and substantial antiestabl-ishment concern.
In concluding that Trinity Lutheran has stated a claim under the Free Exercise Clause, I acknowledge that “[t]he precise bounds of the Locke holding ... are far from clear.” Colo. Christian, 534 F.3d at 1254. However, the best reading of Locke, in my view, is that in the absence *794 of a historic and substantial interest, the Department’s “latitude to discriminate against religion ... does not extend to the wholesale exclusion of religious institutions and their students from otherwise neutral and generally available government support.” See id. at 1255. I therefore respectfully dissent from the court’s affirmance of the dismissal of Trinity Lutheran’s Free Exercise claim. Because this claim is linked to Trinity Lutheran’s Equal Protection claim, I dissent from the court’s disposition of this claim as well. See Locke, 540 U.S. at 720 n. 3, 124 S.Ct. 1307. Moreover, because I would reverse the district court’s dismissal of Trinity Lutheran’s complaint, I need not reach the separate question of whether the district court abused its discretion by denying Trinity Lutheran’s motion to amend that complaint. See Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 n. 2 (5th Cir.2009); see also Xerox Corp. v. Genmoora Corp., 888 F.2d 345, 358 n. 70 (5th Cir.1989) (“For purposes of our remand, we only point out to the trial court that leave to amend should be freely granted and denied only upon a showing of prejudice to the other party.”). I otherwise concur in the court’s opinion.

. The Department did not cite Lueti<emeyer in its appeal brief. By the court’s reasoning, the Department's failure to raise this argument (much less order it first in its brief) serves as "seemingly an implicit acknowledgement” that this argument is “weak.” Ante at 10.